## WOOD vs. McCHESNEY.

The act of March 23, 1850, for the protection of purchasers of real estate upon sales made by order of surrogates, throws upon the party seeking to impeach a sale of real estate under the decree of a surrogate the whole burden of the proof; and if he fails to show a want of jurisdiction in the surrogate to make the order, the law presumes that it was properly made.

If it is shown by affirmative evidence that the surrogate did not acquire jurisdiction to make the order of sale, the proceedings will be held invalid as before the act, and for the same causes. This being the obvious construction of the act, the objection that it is unconstitutional cannot be maintained.

The surrogate may make the order of sale upon the petition of the creditors, under the provisions of the act of 1837, ch. 460, (*Laws of* 1837, *p.* 536,) although all the administrators have not united in making and returning an inventory of the estate.

The proceeding by the creditors is in hostility to the administrators, and the latter will not be allowed to allege their own neglect, to render it inoperative. *Per* MORGAN, J.

The jurisdiction of the surrogate depends upon the petition, and not upon matters outside of it. It is not competent in an action of ejectment, by the heirs, against a purchaser under the sale, to prove in opposition to the statement of the petition, that no account had been rendered by the administrators showing a deficiency of assets to pay the debts.

The object of the act of 1850 was to protect purchasers who had bought the real estate of the deceased upon the faith of the surrogate's decree. And when the petition states facts sufficient to confer jurisdiction upon the surrogate to make the order of sale, the decree should have the same effect as a judgment of a court of general jurisdiction, to protect *bona fide* purchasers. *Per* MORGAN, J.

APPEAL from a judgment rendered upon the decision of Justice MULLIN, at the Onondaga circuit, in July, 1862. The action was brought for the recovery of an undivided sixteenth part of a certain lot in the first ward of the city of Syracuse. The entire premises were owned by Thaddeus M. Wood, deceased, at the time of his decease, who died intestate, leaving Theodore Wood, (the father of the plaintiff,) one of his heirs and inheriting the undivided one-eighth part of all his real estate. Theodore Wood, the father of the plaintiff, died in 1838, seised of the one-eighth part of said

premises, dividing all his real estate in equal portions to his two sons, the plaintiff and Frederick L. Wood. At the time of the commencement of this action the defendant was in possession, claiming title to the entire premises.

The defense consisted of two branches: First. An attempt to show title out of the plaintiff, and in David S. Colvin and Dennis McCarthy, by virtue of a sale made in pursuance of an order of the surrogate of Onondaga county, on the petition of Gardner Lawrence, one of the administrators of said Thaddeus M. Wood, for the payment of his debts, which petition was presented on the 11th day of February, 1839. This defense was overruled at the trial. Second. Title in the defendant, under proceedings before the surrogate to sell said real estate, on the application of George Geddes, a creditor, presented on the 12th day of November, 1840, under which proceedings the land was bid off by Stanton P. Babcock, under whom the defendant claims title.

The facts, so far as they are important to the decision of the questions presented on this appeal, are stated in the opinion of the court.

*Wm. Porter*, for the appellant. (1.) The plaintiff was not divested of his title by the proceedings before the surrogate on the application of Geddes and the deed to Babcock in pursuance thereof. The statute (2 *R. S. tit.* 4, *ch.* 6, § 1,) makes the filing of an inventory by all the administrators, a condition precedent to their application to sell the real estate of their intestate; and this applies as well to applications made by the administrators under §§ 79 and 61, title 4, 2 R. S. 4th ed., as to applications under § 1 of said title. That such is a fair construction of the statute, is evident from the fact that an application from a creditor cannot be made until *after* the rendition of an account by the administrators, (§ 59,) which of course involves the necessity of a previous filing of an inventory, and also from the provisions of § 50, title 4, which requires a surrogate to be satisfied,

before ordering a sale, that the requirements of § 14 of title 4 have been complied with.

(2.) The petition of Geddes shows no claims or demands against Thaddeus M. Wood, deceased. The petition sets forth "that the estate of Hall is a creditor of *Gardner Lawrence* and *Henry Davis, jun.*" The terms "surviving administrators &c.," *is descriptio personarum,* only. (*Gould* v. *Glass,* 19 *Barb.* 179, *and cases there cited.*) But conceding that the petition shows an indebtedness by Lawrence and Davis *as administrators,* such indebtedness may have arisen after the decease of Thaddeus M. Wood, from their action as administrators.

(3.) The case shows, and the court has found, that the application of Geddes was made before an account was rendered by any of the administrators. This objection is fatal, inasmuch as the surrogate has no jurisdiction or authority to entertain such application *until after the administrators shall have rendered their account.* (§ 59, *tit.* 4, *ch.* 6, *part* 2 *R. S. 4th ed.*) The necessity of complying with conditions precedent to confer jurisdiction upon surrogates is shown in *Sibley* v. *Waffle,* (16 *N. Y. Rep.* 180, 190.) "Every statute authority in derogation of the common law to divest the title of one and transfer it to another must be strictly pursued, or the title will not pass." (*Bronson, J. in Sharp* v. *Spier,* 4 *Hill,* 86, *and quoted and approved by Porter, senator, in Striker* v. *Kelly,* 2 *Denio,* 323. *And see* 3 *Comst.* 401.)

*D. Pratt,* for the respondent. (1.) It being admitted that all the administrators duly qualified, the neglect of Henry Davis, jun. and Theodore Wood to join in the inventory would not disqualify Lawrence, who filed the inventory; it would only disqualify Davis and Wood. (*See* 3 *R. S. 5th ed. p.* 173, § 25.)

(2.) If any title was left in the plaintiff after the sale to Colvin, it was divested by the proceedings under the petition of Geddes, made November 12, 1840, which were all regular,

Wood *v.* McChesney.

and passed the whole title to Babcock, the purchaser under that sale. The plaintiff claims that this sale was void, on the ground that Geddes was a creditor, and no account had been rendered before the petition was made. I reply that the petition of Geddes states that the administrators had rendered their account, and that the assets were insufficient to pay the debts; and that is all the statute requires to confer jurisdiction upon the surrogate to make the order. (3 *R. S. 5th ed. p.* 192, § 38.) Now, it is the petition that gives the surrogate jurisdiction, and if the facts therein stated are sufficient and jurisdiction acquired, the proceedings can not be attacked collaterally, but only on appeal. (4 *Wend.* 436. 20 *id.* 240. 2 *Comst.* 459. 4 *Denio,* 118. 3 *Comst.* 41. 18 *N. Y. Rep.* 335.) All that is required to give the surrogate jurisdiction to order a sale of real estate is that it must affirmatively appear that an account of the personal estate has been rendered, and that it is insufficient to discharge the debts. (15 *Wend.* 449.) All this appears in the petition in this case, and when jurisdiction is obtained, it protects all parties in a collateral action. (3 *Comst.* 41. 18 *N. Y. Rep.* 355. 4 *Denio,* 118.) And the statement of a jurisdictional fact in the petition verified, is sufficient. (1 *Seld.* 434. 7 *Barb.* 498. 17 *How.* 422.) The regularity of the proceedings under that petition, aided by the act of 1850, and the decision in 24th Barb. 129, we contend divested the plaintiff's title to the premises in question, and the judgment at the circuit was right, and should be affirmed.

*By the Court,* MORGAN, J. This was an action of ejectment brought by the plaintiff, who was the grandson of Thaddeus M. Wood, deceased, to recover an undivided sixteenth part of a certain lot of land in the first ward of the city of Syracuse. T. M. Wood died in 1836, seised of the premises, leaving a widow and eight children his only heirs at law, one of whom was Theodore Wood, the father of the plaintiff, who died in 1838, leaving a will and dividing all

Wood *v.* McChesney.

his real estate in equal portions to his two sons, the plaintiff and one Frederick L. Wood. The defendant attempted to show title out of the plaintiff under a conveyance of the premises made by the administrators of Thaddeus M. Wood through a sale made in 1839, in pursuance of an order of the surrogate, on the petition of Gardner Lawrence, one of the administrators of T. M. Wood, for the payment of debts; and he also claimed title in himself under a sale made in pursuance of the order of the surrogate on the petition of creditors. This petition was presented by George Geddes, November 12, 1840. The learned judge overruled the first branch of the defense, so far as it rested upon the deed of the administrators made in pursuance of the order of the surrogate upon the petition of Gardner Lawrence as adminis-trator of T. M. Wood, but held that the sale made in pur-suance of the order of the surrogate upon the petition of the creditors was valid, and divested the plaintiff of his title.

It will therefore be unnecessary to examine into the validity of the first sale. As to the second sale, the plaintiff must show affirmatively that the surrogate made the order to sell, without jurisdiction, before it can be impeached in this action. (*Laws of* 1850, *ch.* 82, *p.* 117.) Many of the decisions re-ferred to are inapplicable to this case, as they were made prior to the act of 1850. By that act (§ 1) the sale must be "deemed and held to be as valid and effectual as if made by a court having original general jurisdiction; and the title of any purchaser made in good faith shall not be impeached or invalidated by reason of any omission, error, defect or irreg-ularity in the proceedings before the surrogate, or by an allegation of want of jurisdiction on the part of such surro-gate; except in the manner and for the causes that the same could be impeached or invalidated in case such sale had been made pursuant to the order of a court of original jurisdic-tion." This statute throws upon the party seeking to im-peach such sale the whole burden of the proof; and if he fails to show a want of jurisdiction in the surrogate to make

the order, the law presumes that it was properly made. If, however, the party succeeds in showing, by affirmative evidence, that the surrogate did not acquire jurisdiction to make the order of sale, the proceedings will be held invalid as before, and for the same cause. This being the obvious construction of the act of 1850, the objection that it is unconstitutional cannot be maintained. (*Chandler* v. *Northrup,* 24 *Barb.* 129.)

It is, however, claimed by the appellant's counsel that the order of the surrogate in this case is shown to be without jurisdiction. It is found as a matter of fact that only one of the administrators of T. M. Wood (and there were originally three of them,) ever made and filed an inventory of his personal estate; and it is contended that all of the administrators must make and file an inventory before the creditors can legally present a petition for the sale of the real estate of the intestate for the payment of his debts. It is conceded that the administrators cannot apply for the order of sale, until they shall have made and filed an inventory according to law. (2 *R. S.* 100, § 1.) It is unnecessary to pass upon the question whether all of the administrators must unite in making an inventory before an application can be entertained by the surrogate to sell the real estate under the first section of the statute. The question here is as to the authority of the surrogate to make the order on the petition of creditors under the provision of the act of 1837, ch. 460, § 72. (*Laws of* 1837, *p.* 536.) It is provided in that section that "if after the rendering of an account by an executor or administrator as provided in chapter second, title fourth of the revised statutes, it shall appear that there are not sufficient assets to pay the debts of the deceased, the surrogate, upon the application of any creditor, made at any time after the granting of letters testamentary or of administration, shall grant an order for such executor or administrator to show cause why he should not be required to mortgage, lease or sell the real estate of the deceased for

the payment of his .debts." This is a proceeding hostile to the administrators, and they ought not to be allowed to allege their own neglect, to render it inoperative. The only condition mentioned as preliminary to the making of this order is "the rendering of an account as provided in chapter 6, part 2, title 4, of the revised statutes," showing a deficiency of assets. The petition of Mr. Geddes was presented to the surrogate on the 12th of November, 1840, and it set forth that the administrators of the estate of said Wood had rendered their account showing a deficiency of assets. The entries in the books of the surrogate show that on the first of the preceding April, on the application of Mrs. Emily Bracket, one of the next of kin of said Thaddeus M. Wood, deceased, the surrogate issued a citation to the administrators to appear on the 16th of April to render an account of their proceedings as such administrators, and that on the 29th of April (to which the hearing was adjourned) the administrators presented their account. This account was not finally acted upon and settled, so as to make .it a final accounting, until the 12th day of October, 1841. It is claimed by the appellant's counsel that this accounting was not according to law, but we are bound to presume that it was duly rendered, in the absence of affirmative evidence to impeach it, and there is no such evidence in this case. The original omission of one or more of the administrators to unite in the inventory will not, I think, take away the jurisdiction of the surrogate to make an order of sale, after the rendition of their accounts.

It is claimed by the appellant's counsel that the petition of Geddes fails to show any claim or demands against Thaddeus M. Wood, deceased, for it sets forth "that the estate of Hall is a creditor of Gardner Lawrence and Henry Davis, jun. surviving administrators of·the estate of Thaddeus M. Wood," which is said to be a *descriptio personarum* only. It is also claimed that the indebtedness may have arisen after the decease of Wood and on account of their action as adminis-

trators; in which case no sale of the lands of the deceased can be made to satisfy them. But on reference to the petition we find a statement of the manner in which the indebtedness arose. It arose out of a chancery suit commenced by Hall against Wood, and prosecuted against the administrators after Wood's decease to a final decree, for $8000, besides one half of the taxable costs, except the fees of the examiner. This is not very specific, but sufficiently so to repel the inference of the appellant's counsel that it was not a demand against Wood's estate, at least to the amount of $8000, independent of the costs.

It is also claimed by the appellant's counsel that the application of Geddes was made before an account was rendered by any of the administrators. But this is not true in fact, for the account was rendered on the 29th of April, 1840, and the petition was not presented until the 12th of November, 1840. It was not necessary that the surrogate should have passed upon it as upon a final accounting, prior to the application of Geddes.

Whatever may have been the irregularities before the surrogate in relation to the proceedings of the administrators in making and filing an inventory of the estate of T. M. Wood or in rendering an account of their proceedings, it may be assumed, I think, that the petition of Geddes was sufficient to confer jurisdiction upon the surrogate to entertain the application for an order upon the administrators to sell the real estate. His jurisdiction depends upon the petition and not upon matters outside of it. I think it would not be competent, in an action like this, to prove in opposition to the statement of the petitioner, that no accounting had been rendered by the administrators showing a deficiency of assets to pay the debts. In courts of general jurisdiction, I think a final judgment could not be impeached in this way. The object of the statute of 1860 was to protect *bona fide purchasers*, who had bought the real estate of the deceased upon the faith of the surrogate's decree; and when the petition

states facts sufficient to confer jurisdiction upon the surrogate to make the order of sale, it should have the same effect as the judgment of a court of general jurisdiction, to protect *bona fide* purchasers. But however this may be, the appellant has failed to show affirmatively that any of the necessary steps to confer jurisdiction were omitted in this case. The judgment should be affirmed.

[ONONDAGA GENERAL TERM, April 7, 1863. *Allen, Mullin, Morgan* and *Bacon,* Justices.]