BURLING, appellant, v. KING.

*Attorney and client — agreements between — when equity will not enforce.*

Defendant agreed in writing to give plaintiff, who was her attorney in certain actions against her husband, one-third of the amount realized from such actions for his services and disbursements for counsel, etc. It appeared that plaintiff instituted the actions for the purpose of harassing the husband into a settlement, which purpose he accomplished by vexatious and annoying legal proceedings. Previous to making the agreement defendant had paid plaintiff for his services, etc., $625, and under a decree entered upon the settlement, $1,500 was allowed to the counsel employed by plaintiff, which was paid by the husband. *Held,* that equity would not interfere to enforce the agreement made by defendant, but would leave plaintiff to his action at law.

MOTION by appellant for the re-argument of an appeal.

The action was brought to compel the specific performance of a written agreement made by the defendant in which, after reciting that she had *two* actions, in which she was plaintiff, pending in the supreme court against Louis King (her husband) — one action for the recovery of certain real estate in the city of New York, and the other action for a divorce from her husband — and that the plaintiff in this action had incurred responsibility in the employment of additional counsel and to others in the defendant's behalf in those two actions, in consideration of services rendered and to be rendered by the plaintiff, and to enable him to discharge such responsibilities, the defendant agreed that the plaintiff should retain and have the full one-third of all property or properties, money or moneys recovered in said actions or either of them, and also to convey to the plaintiff, on his request, the said one-third, if a conveyance was necessary to possess him of said one-third of said moneys, property or properties.

The trial was had before Mr. Justice SUTHERLAND, at special term, who found that the plaintiff was not entitled to the specific equitable relief asked for, or any equitable relief, and that his complaint should be dismissed. Plaintiff's appeal from the judgment entered thereon came on to be heard at the May, 1873, general term of this court, when the judgment of the special term, so far as specific performance was refused, was affirmed, and in other respects reversed, and a special issue directed to be tried at

the circuit as to whether, on a *quantum meruit*, the plaintiff was entitled to further compensation. The opinion of the general term therein is given in 8 Alb. Law Jour. 301.

*Ira Shaffer*, for appellant.

*William A. Cowsen*, for respondent. The agreement should not be sustained. It is against public policy. *Crawford* v. *Russell*, 62 Barb. 92 ; *Rose* v. *Truax*, 21 id. 361, 379. There was no mutuality in it. *Ogden* v. *Jackson*, 1 Johns. 370 ; *German* v. *Machin*, 6 Paige, 288. The husband was alone liable for the services in the divorce suit, and the whole agreement falls. *Davis* v. *Morris*, 36 N. Y. 573 ; also cited *Clarke* v. *Rochester, etc., R. R. Co.*, 18 Barb. 350 ; *Slocum* v. *Closson*, 1 How. App. Cas. 705 ; *Watt* v. *Rogers*, 2 Abb. Pr. 261.

DAVIS, P. J. It is well settled that a bill in equity for the specific performance of a contract is an application to the sound discretion of the court, which withholds or grants relief according to the circumstances of each particular case. As was well said by SUTHERLAND, J., in the court below, the agreement sought to be enforced "must be certain in its terms, mutual in its character, fair and just, and founded on an adequate consideration, and be in its nature and circumstances unobjectionable to a court of equity."

The agreement in this case was made between attorney and client, stipulating in behalf of the attorney for a large share of the property in litigation, or to become the subject of litigation, as a compensation for services rendered or to be rendered, and for expenses in the employment of additional counsel "and others" in behalf of the plaintiff. It has been held that such agreements can be lawfully made under section 303 of the Code. *Benedict* v. *Stuart*, 23 Barb. 420. But the rule is still in full force that such agreements are regarded with suspicion by the courts, and in case the meaning of the instrument is not transparently obvious the most favorable construction is to be put upon it in favor of the client. *Hitchins* v. *Van Brunt*, 38 N. Y. 335 ; *Brotherson* v. *Consalus*, 26 How. 213 ; *Fish* v. *Fish*, 39 Barb. 513.

Agreements between attorney and client of the kind sought to be specifically enforced in this case, when brought before a court of equity for its consideration, are subject to the well-settled principles that enjoin upon the court carefully to scrutinize the dealings and

contracts between attorney and client, and to protect the latter against every attempt of the former to gain any undue advantage over his client. All presumptions are in favor of the client, and there must be clear proof, not only of the due execution of the instrument, but also of its integrity and entire fairness, outside the paper itself. *Brock* v. *Barnes,* 40 Barb. 521; *Nesbit* v. *Lockman,* 34 N. Y. 167, and see opinion of BACON, J., in *Hitchins* v. *Van Brunt,* 38 N. Y. 342 ; Story's Eq. Juris., §§ 308–324; *Ford* v. *Harrington,* 16 N. Y. 285; *Comstock* v. *Comstock,* 57 Barb. 453. It is, I think, to be regretted that the courts, in construing section 303 of the Code, did not discriminate between contracts properly stipulating a measure of compensation for professional services, and those in which attorneys secure to themselves an interest virtually as owners in the subject-matter of the litigation. The construction which permits such ownership tends to promote litigation in some of its worst forms, and to degrade the legal profession by involving its members, who allow themselves to make such contracts, in practices which the common law, and formerly the statutes of this State, denounced and punished as criminal, under the general designation of champerty and maintenance. It is quite easy to agree upon the compensation of an attorney without measuring it by a share, or any participation in the property recovered. Although such contracts are probably enforceable at law, I think it yet remains to be seen whether courts sitting in equity will classify them with the kind to which it applies its discretionary power to compel specific performance.

The learned justice who tried this case found as a fact that the agreement of plaintiff was, on his part, with intent to prosecute and carry on said actions with the aid of counsel to be employed by him with a view of harassing the defendant in them into some settlement or result similar to that which actually took place. The evidence quite justified the finding, for it shows that while the present plaintiff brought the heavy artillery of able counsel into the case and another person as attorney of record, he devoted himself to the guerilla tactics of hanging upon the flanks of the enemy to annoy him with affidavits and orders, injunctions, receivers, motions and stays, till he was glad to surrender at discretion. The counsel of Mr. King, testifying on behalf of the present plaintiff, says: "I was never more harassed in a litigation in my life than I was by Mr. Burling's services in that case. * * * I would come

to my office in the morning and find a bundle of affidavits and notices of motion. I would do my best to reply to them, but before I did it I would find another bundle of affidavits. He was always making motions to dismiss every thing I did. I took an appeal from an order, and then I had a bundle of affidavits to dismiss that. I don't know how many affidavits, but, seemingly from Germans, from a great number of persons, an infinite number of affidavits on every conceivable branch of the case." And again, after describing the injunctions and receivership, he says: "I never was more harassed with the efforts of an attorney. * * * I was exceedingly glad to settle."

The plaintiff himself describes the character of some portion of his work, showing that it was not limited to the bar of the court. "There has been," he says, on his direct examination, "a great deal of money spent in that suit. * * * I would rather not go into particulars about the matter; there were matters that money had to be paid for." And, on cross-examination, when pressed to account for the alleged disbursement of the money paid him by Mrs. King, "You are now getting beyond my recollection; I kept no account of that matter at all; I was continually going to lager beer saloons and to all sorts of places where money had to be spent." And when closer pressed, he says: "I object to giving these details, for the reason that a great part of this business is confidential entirely, with all these parties." When asked by his counsel to state, generally, how much time was consumed in procuring the affidavits and papers up to the time of the injunction and motion to vacate, the plaintiff answered: "I cannot say, further than that my time was almost continually occupied in obtaining the affidavits and papers in that printed book; it took almost the whole of my time during that period; there were a great many papers and affidavits drawn that were not used — affidavits taken from parties to prevent them from being afterward used against us; there was a great pile of them."

It seems to me impossible to conceive a better illustration of the injurious effect of such agreements between attorney and client than the disclosures of the plaintiff himself present, nor stronger reasons why a court of equity should refuse to enforce a contract which finds its consideration in the services he described and proved.

It is true the learned judge who pronounced the opinion at general term fell into an error of fact as to the time when Mrs. King

Burling v. King.

paid to plaintiff the $625, which he admitted he had received. He supposed it was after the making of the contract when in fact it was before; and upon this error he based a strong argument in favor of affirming the judgment, but the court below fell into no such error; and omitting all that was said on that subject by the learned judge in his opinion, reasons quite abundant for affirmance still remain.

The court below justly regarded the payment of the $1,500 counsel fee on the settlement as a fact strongly indicating the impropriety of a specific performance. It is true, the counsel employed with sagacious prudence, had that sum made payable by the decree directly to himself, but he testified himself that he was not employed by Mrs. King but by the present plaintiff, and looked to him alone for his compensation. He was, therefore, Burling's counsel and agent, and what he did must be regarded as Burling's act; and it appears that it was approved by him. If the contract meant any thing, it meant that the plaintiff should pay all the expenses of counsel; whatever was got from the other side for that purpose belonged justly and equitably to Mrs. King, yet with that sum virtually in plaintiff's pocket (for it relieved him *pro tanto* from his liability to his counsel), he asks a court of equity still to compel the conveyance to himself of one-third of the real estate which was conveyed to Mrs. King by her husband on the settlement. The refusal of Justice SUTHERLAND to do this seems to me to have been altogether right. He turned the plaintiff over to his remedy (if any) at law. The court at general term have dealt more favorably with him in allowing him to go to a jury with the question whether he has not already been adequately paid.

I think the plaintiff has no right to complain of this result; and the order appealed from ought to be affirmed.

DANIELS and DONOHUE, JJ., concurred.

*Motion denied.*