### SHAFFER v. BACON et al.

(Supreme Court, Appellate Division, Fourth Department. December 9, 1898.)

1. ASSUMPSIT—RIGHT OF RECOVERY—EQUITY.
  An action by an administrator de bonis non, "indebitatus assumpsit," to recover from an attorney money paid to him by the executor out of decedent's estate for services rendered in endeavoring to establish a will, although legal in its nature, requires plaintiff to establish a right founded on equity and justice.

2. EXECUTORS—EXPENSES OF ADMINISTRATION.
  Where an executor is required to expend money in the proper administration of the estate, he may use the funds of the estate.

3. SAME—PROBATE OF WILL—ATTORNEY'S FEES.
  Attorney's fees for services attending the probate of a will are proper expenses to be paid out of the estate.

4. SAME.
  Although a person named as executor in a will which he presented for probate knew that it was void, yet attorneys who in good faith rendered services in endeavoring to sustain the instrument, the greater portion of which were rendered during a time when such person had been adjudged the legal executor of the estate, are not liable to the estate for money paid to them for such services out of the funds of the estate.

Appeal from trial term, Monroe county.

Action by William H. Shaffer, as administrator of the estate of George A. Bartholick, against Theodore Bacon and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, and WARD, JJ.

William De Graff, for appellant.

Henry Selden Bacon, for respondents.

ADAMS, J. The plaintiff, as administrator de bonis non of George A. Bartholick, deceased, brings this action to recover of the defendants, who were partners in the practice of law at the city of Rochester, certain sums of money paid to them by one Charles Flaherty, as executor of the last will and testament of Bartholick, in compensation for professional services rendered to Flaherty as executor, in a protract-

ed litigation over the probate of the will under which he assumed to act. There is but little, if any, controversy respecting the essential facts of the case, which may be thus briefly epitomized: The decedent, who was a resident of the city of Rochester, departed this life in July, 1888, leaving an instrument which purported to be his last will and testament. In this instrument Flaherty was named as the sole executor thereof, and, by its terms, he was entitled to receive a legacy of $15,-000. Flaherty subsequently offered the alleged will for probate, and, although vigorously contested by one of the decedent's heirs at law, it was duly admitted by the surrogate of Monroe county. Letters testamentary were thereupon issued to Flaherty, who took possession of the personal assets of the estate, which were of the value of about $30,000. An appeal was then taken to the late general term, where the decree of the surrogate was reversed, and issues were framed for a trial by jury of certain questions of fact. Upon the trial of these issues, the jury, by their verdict, found that the decedent was not, at the time of the execution of the alleged will, possessed of testamentary capacity, and that its execution was procured by fraud and undue influence. The case then went back to the surrogate's court, where, on the 6th day of June, 1892, a decree was entered adjudging the alleged will void, and revoking the former probate thereof. From this decree, Flaherty appealed to the general term, and then to the court of appeals, but in neither instance was he successful in his effort to reverse the decree of the surrogate. In re Bartholick's Will, 141 N. Y. 166, 36 N. E. 1. Before the alleged will was offered for probate, the defendants were retained by Flaherty, and, in pursuance of such retainer, they acted as his legal advisers and counsel until the second appeal to the general term was perfected. From time to time during this period, Flaherty paid to his counsel various sums of money, which had come into his hands as executor; but the moneys thus paid amounted in the aggregate to no more than a reasonable and adequate compensation for the services which the defendants had rendered. Subsequently, the plaintiff was duly appointed administrator de bonis non, and he thereupon brought this action. Upon the foregoing state of facts, this court is called upon to determine whether or not the plaintiff's action can be maintained, or, in other words, whether the defendants can be compelled to pay over to the plaintiff the moneys which they have actually earned, and which they have received in the utmost good faith for valuable services rendered by them in behalf of an estate, at the instance of one who, at the time of the rendition of the greater part of those services, was, both de jure and de facto, the personal representative of that estate. The theory upon which this action is sought to be maintained, if we correctly apprehend the position of the learned counsel for the plaintiff, is that inasmuch as the defendants have received moneys which they knew belonged to the Bartholick estate, in settlement of an account for the payment of which the representative of that estate was primarily personally liable, they have thereby not only profited by a devastavit of the estate, but they have actually participated in the misappropriation of trust funds. If this view of the case finds warrant in the facts above stated, it is not to be denied that there is great force in the contention that the defendants should be required to restore

to the estate the moneys thus obtained; for it is a rule too well settled to admit of discussion that one who holds moneys as agent, trustee, executor, administrator, guardian, or partner has no authority or right to use the same in payment of his individual debt, and that, if he does thus use it, the party who receives it with knowledge of the facts does so at his peril. National Bank v. Insurance Co., 104 U. S. 54; Gerard v. McCormick, 130 N. Y. 261, 29 N. E. 115; Marshall v. De Cordova, 26 App. Div. 615, 50 N. Y. Supp. 294. But, unfortunately for the plaintiff, this contention rests upon a rule which, in our opinion, has no application to the facts of this particular case, and therefore, for reasons which we shall proceed to state, it must be regarded as untenable.

This action is one which, under ancient nomenclature, would have been designated "indebitatus assumpsit," or an action for money had and received to the use of the plaintiff; and although such an action is, strictly speaking, legal in its nature, it is one wherein the plaintiff may not recover until he establishes a right founded upon equity and justice; and it is likewise one in which the same principle operates in favor of a defendant who is in this manner called upon for the payment of money. Eddy v. Smith, 13 Wend. 488; Cope v. Wheeler, 41 N. Y. 303; Rothschild v. Mack, 115 N. Y. 1, 21 N. E. 726. Now, it is undoubtedly true, as claimed by the plaintiff's counsel, that primarily an executor personally, and not the estate, is liable for all contracts made by him in the course of the execution of his trust, even though they be made in the interest of the estate which he represents (Ferrin v. Myrick, 41 N. Y. 315; Austin v. Munro, 47 N. Y. 360); and in one instance, at least, this rule has been extended so far as to hold that it was not within the power of an executor or administrator to bind an estate to pay counsel whom he had employed to assist him in preparing and settling his accounts (Wilcox v. Smith, 26 Barb. 316). The peculiar circumstances, however, which appear to have influenced the court in reaching the conclusion it did in the case last cited need not be adverted to with particularity, inasmuch as the court was particular to say that the principle upon which it was decided in no wise conflicts with the statutory rule which authorizes an allowance to executors and administrators for such actual and necessary expenses as are justly and reasonably incurred by them in the management of estates committed to their care. But while, theoretically, the estates of deceased persons are administered upon the principle, asserted in many cases of which those above cited are types, that the executor or administrator shall personally advance the necessary expenses of administration in reliance upon the final decree of the surrogate for reimbursement, yet it is well known that no administrator or executor does in fact thus execute his trust. On the contrary, he pays all necessary expenses of administration out of the trust funds, if he happens to have sufficient on hand for that purpose, with the understanding that if, for any reason, upon the final settlement of his accounts, any item of expenditure thus made shall be disallowed by the surrogate, he will be required to reimburse the estate therefor. Indeed, it would be impossible in many cases to secure the services of a competent administrator if he were compelled to personally advance the necessary expenses of administration. Nor is it difficult to imagine circumstances in which a rigid enforcement

of such a rule would prove exceedingly prejudicial to the estate; and it is probably in recognition of this latter fact that the tendency of the more recent adjudications is in the direction of a relaxation of the rule. We apprehend, therefore, that the real principle which should govern in cases where the executor is required to expend money in the proper administration of the estate which he represents is that "he may use the funds of the estate for purposes authorized by law, but he may not bind the estate by an executory contract, and thus create a liability not founded upon a contract or obligation of the testator" (Austin v. Monro, supra); or that, in other words, the necessary expense of administering an estate may be regarded as a charge upon, although not a debt against, the estate (Fitzhugh's Ex'r v. Fitzhugh, 11 Grat. 300). If this rule is adopted, as, we think, it should be, in the present case, it only remains to determine what are proper and necessary expenses of administration. It has been held in a number of cases that reasonable funeral expenses are a necessary and proper charge upon the estate of a decedent, and that, as such, they may be collected of the executor or administrator in his representative character. Patterson v. Patterson, 59 N. Y. 574; Dalrymple v. Arnold, 21 Hun, 110; Laird v. Arnold, 25 Hun, 4; Id., 42 Hun, 136; Koons v. Wilkin, 2 App. Div. 13, 37 N. Y. Supp. 640.

It is doubtless a fact of which courts may take judicial notice that a dead man cannot purchase his own coffin; but, nevertheless, as was suggested in the case first above cited, a decent respect for the decedent, as well as a proper regard for public sentiment, requires that the dead shall be interred with such degree of solemnity and ceremony as befits the occasion; and it is eminently proper that whatever expense necessarily attends the performance of this duty shall be borne by the estate of the deceased person, and not by his personal representative. The same may be said of the expenses of probate; for the probate of a will, of necessity, precedes the formal authority of the executor to enter upon the execution of his trust (Patterson v. Patterson, supra), and it is consequently just as important that he should see to it that this step is taken as it is that he should arrange for the proper burial of the dead, and, to that end, that he should employ reputable and efficient counsel, if, perchance, circumstances make it necessary for him, in the discharge of his duty, so to do. In a comparatively recent case it was said that "a testator, in naming an executor, gives him an implied authority and direction to do all he reasonably can to prove and carry out the will; and this carries with it the right to charge the estate with the reasonable expense." Douglas v. Yost, 64 Hun, 155–162, 18 N. Y. Supp. 834. And this principle is affirmed with even greater emphasis in another case, in which it is asserted that, where an executor had received letters testamentary on a will duly proved, he "was not only authorized, but it was his duty, believing" the paper to be the last will of the decedent, "to support the [probate]; and he was entitled to the aid of the estate to discharge all reasonable costs and expenses incurred on that account." Bradford v. Boudinot, 3 Wash. C. C. 122, Fed. Cas. No. 1,765.

But it will doubtless be urged that the rule as thus stated has no application to the present case, inasmuch as Flaherty knew or ought

to have known that the instrument tendered by him for probate was not in fact what it purported to be. This would perhaps be a sufficient reason why he personally should be denied reimbursement for any moneys actually paid out by him in his effort to probate the alleged will; but it must be borne in mind that this is not a proceeding against a fraudulent executor, but an action against innocent third parties, who, it is expressly admitted, have rendered valuable service in good faith, and in behalf of one who, at the time the greater portion of such service was rendered, had been adjudged the legal representative of a large and valuable estate. In view of these facts, we think the defendants are entitled, ex æquo et bono, to invoke, in an action of this nature, precisely the same principle as would be available to them had the instrument propounded been finally established as the last will and testament of George A. Bartholick; and, for these reasons, we are of the opinion that the judgment appealed from must be affirmed.

Judgment affirmed, with costs. All concur, except HARDIN, P. J., not voting.