In re BENDER'S WILL. In re SMITH et al. (two cases). In re SCHERER et al.

(Supreme Court, Appellate Division, Third Department. January 8, 1906.)

1. COURTS—SURROGATE'S COURT—ENFORCEMENT OF ATTORNEY'S LIEN—AUTHORITY.

Under Code Civ. Proc. § 2, declaring that a Surrogate's Court is a court of record, and Const. 1894, art. 6, § 15, providing that Surrogate's Courts have the jurisdiction, which existing Surrogate's Courts possess, until otherwise provided, a Surrogate's Court is a court of record authorized under section 66, Code Civ. Proc., empowering the court on petition to determine and enforce the lien of an attorney for services in special proceedings, to determine and enforce the lien of an attorney rendering services in the settlement and distribution of the estate of a testator.

2. SAME—RULES—APPLICABILITY.

Under Code Civ. Proc. § 17, providing that the rules of practice established in the manner therein provided shall be binding on all the courts,

and all the judges and justices thereof, except the court for the trial of impeachments ·and the court of appeals, General Rules of Practice No. 10, relating to the change of attorneys, is applicable to the Surrogate's Court.

3. EXECUTORS AND ADMINISTRATORS—EXPENDITURES—LIABILITY OF ESTATE.

Though primarily an executor is personally liable for all contracts made by him in the execution of his trust, the necessary expenses of administering an estate may be regarded as a charge against the estate, and when the expenses incurred are necessary and proper they are payable from the estate.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, §§ 410, 448–462.]

4. ATTORNEY AND CLIENT—LIEN—RIGHT TO A LIEN.

An attorney has a lien for his compensation for professional services and for disbursements on the moneys and property received by him on his client's behalf in the course of his employment.

[Ed. Note.—For cases in point, see vol. 5, Cent. Dig. Attorney and Client, §§ 378–406.]

5. SAME.

The right of an attorney to a lien for his compensation is not affected by the fact that the client is an executor, and that the services were rendered and property received on behalf of the estate, nor is it confined to property recovered by judgment.

[Ed. Note.—For cases in point, see vol. 5, Cent. Dig. Attorney and Client, §§ 378, 399–406.]

6. EXECUTORS AND ADMINISTRATORS—COMPENSATION OF ATTORNEY—ENFORCEMENT.

Where, in proceeding in a Surrogate's Court to determine and enforce the lien of attorneys for services in the settlement of an estate, no services were shown to have been rendered for the executor, as legatee under the will, or for him individually, as apart from the services, the amount of which were proper expenditures from the estate, the Surrogate's Court ordering that the amount found due the attorneys was a lien on the assets could not order that they have execution against the executor individually, that, being in effect a judgment against the executor individually.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, § 1912.]

Appeal from Surrogate's Court, Albany County.

In the matters of the judicial settlement of the account of William A. Smith and another, as executors of Mathew W. Bender, deceased, and of the application of Robert G. Scherer and another, constituting the firm of Scherer and Downs, to have a lien for their services as attorneys determined and enforced, and of the application of the executors to substitute Dyer and Ten Eyck, as attorneys in the place of Scherer and Downs. From an order of the Surrogate's Court affirming a report of a referee, and directing that Scherer and Downs recover from William A. Smith and another, individually, and as executors, the amount found due them for services as attorneys, and making the same a lien on the assets of the estate of Mathew W. Bender, deceased, and from an order of reference appointing a referee to take proof as to the amount and value of the services rendered by the attorneys to the executors, as executors and individually, the executors appeal. Motion to dismiss denied, and orders modified.

Mathew W. Bender, of Albany, made his last will and testament on the 1st day of June, 1900. On the the 9th day of July, 1900, he transferred all his property to William A. Smith, in trust for his own benefit during his life, and said Smith accepted the trust and took possession of said property, and held the same during the life of said Bender. Mathew W. Bender died on the 21st day of May, 1903, and his said last will and testament was admitted to probate on the 25th day of May, 1903, and letters testamentary were on that day issued to said William A. Smith and Irving R. Coughtry, who were named as executors in said will. By said will said William A. Smith was given a legacy of $2,000 and Irving R. Coughtry, a legacy of $5,000 each, in lieu of legal commissions as executor and trustee. $30,000 was given to William A. Smith in trust to pay the income to the testator's son, Frederick H. Bender. The will also contained various other bequests, and the residue of the estate was given to five persons in equal shares. Said Irving R. Coughtry is one of said residuary legatees. The said Frederick H. Bender was the only heir at law and next of kin of said Mathew W. Bender, and he died on the 1st day of May, 1904, without leaving a widow or descendant. Scherer & Downs, attorneys and counselors at law at Albany were employed by said executors as their counsel, and they procured the probate of said will. The property of Mathew W. Bender, being wholly in the possession of Smith, as trustee under the express trust an action, was brought in the Supreme Court in the name of Smith as such trustee against Frederick H. Bender, and Smith and Coughtry as executors, and all the legatees and persons interested under said will of Mathew W. Bender for an accounting by said plaintiff. There were one or more appearances in that action, and a guardian ad litem was appointed for an infant defendant; but there was no answer or contest therein. On or about the 6th day of July, 1903, Scherer & Downs rendered to Smith, as trustee, a bill as follows: "To preparing trust agreement between Mathew W. Bender and William A. Smith, and advice and counsel to William A. Smith, as such trustee, pertaining to matters between said William A. Smith and Mathew W. Bender, from July 1, 1900, to May 22, 1903, $500."

Smith insisted that this bill was too large, and it is claimed by Smith and Coughtry that they were told by one of said attorneys that the $500 included payment for their services in the release and discharge of Smith as trustee, and in the probate of the will. The statements of Smith and Coughtry as to what was included in said bill are disputed. Subsequently, and on July 29, 1903, judgment was obtained in the accounting action at special term, in which judgment Scherer and Downs, as attorneys and counsel for the plaintiff, were allowed taxable costs amounting to $135.50, and an extra allowance of $1,000. Smith, as trustee, declined to pay the costs and extra allowance. He says he was told that these amounts were allowed by the judge, and that he was also threatened with suit if he did not pay, and that on July 31, 1903, he paid the amounts, namely, $1,000 and $135.50. Coughtry was then out of town, and on July 30, 1903, Scherer & Downs wrote to him stating in the letter that the court had allowed them an extra allowance of $1,000 besides the costs of the action. Coughtry did not reply to such letter, and Scherer & Downs were continued as counsel for the executors. Smith, as trustee, then transferred the property held by him to the executors in accordance with the provisions of said judgment in the action for an accounting, and an inventory was duly taken under charge of said attorneys, which shows that the estate then amounted to $94,174.50. The executors had many consultations with their counsel in regard to the estate and relating to the interests thereof. Said attorneys appeared for the executors before the transfer tax appraiser and filed a brief with him in relation to said tax. They appeared before the assessors of the city of Albany, and obtained a reduction of the personal assessment against the executors as such from $90,000 to $20,000. In view of the fact that some of the legacies given by the will might be declared void, they obtained an assignment from Frederick H. Bender of any interest that he might have in his father's estate other than his income on the trust fund given for his benefit by said will. They prepared the executors' account and commenced the proceeding for a final judicial settlement of the account of said executors in the Surrogate's Court, and obtained the service of the necessary citations therefor, and for the construction of said will in connection with the distribution of the estate.

On such accounting two questions arose as to the construction of said will. The oral argument on behalf of the different persons appearing in relation to such construction was had, and briefs were filed thereon. On April 5, 1904, at an adjourned day of said proceedings in the Surrogate's Court, it appeared that an item of $1,500 credited in the executor's account as paid to the attorneys in full of all services performed for the executors commencing with the probate of the will, and including the accounting and the final distribution of the estate, and any action or proceeding relating to the construction of said will, had not in fact been paid, and a controversy arose as to the amount that should be paid said attorneys and an adjournment of the proceedings was taken. Scherer and Downs then filed their petition in the Surrogate's Court, praying that the surrogate, "by virtue of the powers conferred upon him by section 66 of the Code of Civil Procedure will determine the extent, and the amount of the lien of your petitioners for their services and enforce the same." A citation was thereupon issued to said executors requiring them to show cause why the lien of said attorneys should not be determined and enforced. The executors thereupon filed a petition asking that "an order be made substituting Dyer & Ten Eyck, Esquires, attorneys and counselors for your petitioners in the above-entitled proceeding now pending in this court in the place and stead of Scherer & Downs, Esquires." The answer of the executors to the petition of Scherer & Downs refers to their services commencing with the proof of the will and further alleges that the said services were not worth to exceed $350. It also alleges that at the time Smith as trustee paid said $500, that the attorney stated that it included pay for the probate of said will; it also alleges the payment by Smith as trustee of said costs and extra allowance granted in the accounting action in the Supreme Court. The answer of the attorneys to the petition of the executors asks that the value of their services be ascertained, and that the substitution of attorneys be made on condition that the amount found to be due for their services be made a lien upon the fund in the hands of the executors. The Surrogate's Court appointed a referee "to take proof as to the amount, character, and value of the services rendered by the said Scherer & Downs, on behalf of the said William A. Smith and Irving R. Coughtry, individually, and as executors, and as to any payment made on account thereof, and to report such proof and opinion to the court." Hearings were had before the referee, and he reported: "First. That the value of the services rendered by Messrs. Scherer & Downs on behalf of William A. Smith and Irving R. Coughtry, individually, and as executors in the above-entitled matters, respectively, referred to me as aforesaid is the sum of $1,500. Second. That they have been paid upon account thereof by the said executors the sum of $200. * * * I am inclined to think that this item of $1,000 is pertinent to the matter before me. To say the least the right of Scherer & Downs to it is not free from doubt. * * * Evidence was given as to the value of the services of Scherer & Downs varying in estimate from $550 to $2,500. * * * Before the proceedings for the accounting were instituted, but in anticipation of instituting them, Scherer & Downs fixed the price that they would ask to have allowed them upon the accounting at $1,500. * * * While the bill for $1,500 is not conclusive against them, it is high evidence of their estimate of the value of their services. Doubtless, they fixed that price in view of the $1,000 they have received from the estate under the order for extra allowance in addition to the $500 paid them, as aforesaid, by trustee Smith. * * * I think $1,500 under the circumstances a reasonable compensation for their services." The surrogate, however, in separate findings held that the payment of said extra allowance and costs in the accounting action was "not in issue, and not pertinent to issue" in these proceedings. The report of the referee was confirmed by the surrogate, and the order appealed from was entered.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and KELLOGG, JJ.

Dyer & Ten Eyck (Jacob L. Ten Eyck, of counsel), for appellants. J. Murray Downs, for respondents.

CHASE, J.   It is provided by section 66 of the Code of Civil Procedure as follows:

"The compensation of an attorney or counselor for his services is governed by agreement express, or implied, which is not restrained by law. From the commencement of an action or special proceeding, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, decision, judgment or final order in his client's favor and the proceeds thereof in whosoever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment or final order. The court upon the petition of the client or attorney may determine and enforce the lien."

By the amendment of said section in 1899 (chapter 61, p. 80, Laws 1899) a special proceeding was included therein, and the court was given express authority upon the petition of the client or attorney to "determine and enforce the lien" therein mentioned. Surrogates' Courts are now courts of record (section 2, Code Civ. Proc.) and the Constitution of 1894 (article 6, § 15), provides:

"Surrogates and Surrogates' Courts have the jurisdiction and powers which the surrogate and existing Surrogates' Courts now possess until otherwise provided by the Legislature."

The Court of Appeals, in Matter of Regan, 167 N. Y. 338, 60 N. E. 658, say:

"It seems to us that the power of the Surrogate's Court to protect the lien of an attorney has been assimilated by modern legislation to the power exercised in that respect by the Supreme Court and the other courts of record of the state. There is now no reason that we can perceive for denying this power to a court that exercises such extensive jurisdiction over persons and property. An attorney duly admitted to practice in all the courts of record of the state is an attorney of the Surrogate's Court, and his functions as an officer of that court are quite as important to the community and to his clients as the services that he may perform in any other court. * * * It must be regarded as settled law in this state that an attorney, who has procured for his client a judgment or decree, has a lien upon the same for his compensation, and this lien is not confined to mere taxable costs, but to such sum as he is entitled to receive under his retainer, or under an agreement express or implied."

In Matter of Fitzsimons, 174 N. Y. 15, 66 N. E. 554, the court, on an appeal from an order made in a proceeding before the surrogate for a compulsory accounting by an administratrix, and in which the appellant, an attorney, presented a petition setting forth facts entitling him to a part of any recovery to which his clients would be entitled upon such accounting, and to compensation as attorney for the contestants, say:

"That the proceeding instituted by the appellant to establish his lien was a special proceeding, which, might be properly instituted in a Surrogate's Court, there is now no doubt."

In Matter of King, 168 N. Y. 58, 60 N. E. 1056, the court in discussing the question of the jurisdiction of the Supreme Court to determine the amount of indebtedness in a proceeding under said section 66 of the Code of Civil Procedure say:

"We do not understand the clause to be violative of the provisions of the Constitution or that the parties were entitled to a jury trial. In this case, the petitioners had a lien created by statute. The proceedings provided for

by the Code are instituted by a petition, and are in the nature of the foreclosure of a lien."

The statute must be construed liberally (Fischer-Hansen v. Brooklyn Heights R. R. Co., 173 N. Y. 492, 66 N. E. 395), and, as so construed, it gives to Surrogates' Courts power to determine the lien and the amount thereof, and to enforce it. Rule 10 of the general rules of practice provides:

"An attorney may be changed by consent of the party and his attorney or upon application of the client upon cause shown, and upon such terms as shall be just, by the order of the court or a judge thereof; and not otherwise."

The general rules of practice are applicable to Surrogates' Courts. Section 17, Code Civ. Proc. See Chatfield v. Hewlett, 2 Dem. Sur. 191; Jessup's Surrogate's Practice, 126. The proceeding for a judicial settlement of the account of the executors was pending when the proceedings by the appellants and respondents, respectively, were commenced. The proceedings by the appellants and respondents, respectively, were heard and determined as one proceeding, and by the petitions and answers; the substantial question for the determination of the court was the amount which should be paid to the attorneys from the estate of the deceased. Primarily, an executor, personally, and not the estate, is liable for all contracts made by him in the execution of his trust. Notwithstanding this rule, the necessary expenses of administering an estate may be regarded as a charge upon, although not a debt against the estate, and when the expenses incurred by an executor are by the court found to be necessary and proper in the administration of the estate, they are payable from the estate. Shaffer v. Bacon, 35 App. Div. 248, 54 N. Y. Supp. 796, affirmed 161 N. Y. 635, 57 N. E. 1124; 18 Cyc. 443; 11 Am. & Eng. Ency. of Law (2d Ed.) 1240.

An attorney has a lien for his compensation for professional services, and for disbursements upon the moneys and property received by him on his client's behalf in the course of his employment. This right of lien is not affected by the fact that the client is an executor, and the services were rendered and moneys and property received on behalf of the estate, nor is it confined to moneys and property recovered by judgment. Matter of Application of Knapp, 85 N. Y. 284; 6 Cyc. 1015, 1016; Arkenburgh v. Little, 49 App. Div. 636, 64 N. Y. Supp. 742, with opinion in 27 Misc. Rep. 760, 59 N. Y. Supp. 612; Matter of Crouch, 41 Misc. Rep. 349, 84 N. Y. Supp. 755; Krone v. Klotz, 3 App. Div. 587, 38 N. Y. Supp. 225; Halbert v. Gibbs, 16 App. Div. 126, 45 N. Y. Supp. 113.

The record does not disclose that any one at any time suggested that if the court had jurisdiction to determine the amount of the attorney's lien for services, that the lien should be confined to services rendered after the commencement of the proceeding for a judicial settlement of the executors' account. It seems to have been assumed without controversy or objection that with the two proceedings before the court an allowance should be made, if at all, for all services rendered to the executors in the administration of the estate, and for which the estate should pay. It may be assumed from the record that the attorneys had papers of the estate in their pos-

session to which a lien would attach for services, and which fact the court could consider in determining under rule 10, what would be just on the substitution of attorneys, as asked by the appellants. The referee's report is, in effect, that the attorneys, in addition to the amounts already received by them, were entitled from the estate to $1,500, from which should be deducted a payment thereon of $200. No services were shown to have been performed for the executors, as legatees, or for them individually as apart from the services, the amount of which were proper expenditures from the estate of the deceased. Nothing was directed by the order to be paid by said executors, individually, beyond or in addition to the amount made a lien upon the assets of said estate.

The order of the Surrogate's Court confirmed the report of the referee in all things. The findings submitted to and made by the surrogate months after the order had been made and entered were somewhat contradictory when taken in connection with the order confirming in all things the referee's report, but such findings do not change the question now before us for consideration. The report of the learned referee and the order of the Surrogate's Court confirming said report are principally based upon the determination of questions of fact. The evidence was conflicting, and the learned referee and the court with the parties and witnesses before them have determined such questions in favor of the respondents, and we cannot say that their determination is against the weight of evidence. The surrogate has, by the order, found that the amount found due the attorneys is a lien on the assets of the estate, and must be paid before the substitution of attorneys takes effect. The order goes further, and directs that the respondents have execution against the executors, individually, for the amount so found due the respondents. This, in effect, directs a judgment in favor of the respondents against the appellants, individually, as in a common-law action for work, labor, and services. We are not aware of any authority in the Surrogate's Court to make that part of the order.

The order should be modified by striking therefrom that part thereof directing that execution issue against the executors, individually, for the amount directed to be paid to the attorneys, and as so modified, affirmed, without costs. All concur.