Matter of the Judicial Settlement of the Accounts of the Administrators of the Estate of ERT H. DOLLAR, Deceased.

(Surrogate's Court, St. Lawrence County, March, 1918.)

Accounting — by administrators — attorneys — parties — Surrogate's Court — distribution — payment of moneys into court — county treasurers.

> Where a controversy arises over the funds of an estate collected by the attorney for the administrators the Surrogate's Court may require him to deposit the funds to the credit of the estate pending the determination of the rights of the parties.
>
> Where a decree settling the accounts of administrators and ordering a distribution of the estate provided that any party might apply at the foot of the decree for further relief, the decree will be reopened for the purpose of including in the account, as assets of the estate, moneys collected by the attorney for the administrators and retained by him without their knowledge or consent, and an order entered requiring the attorney to pay said moneys into court by depositing the same with the county treasurer to the credit of the estate subject to the further order of the court.

APPLICATION by administrators for a reopening of the decree made herein.

Surrogate's Court, St. Lawrence County, March, 1918.    [Vol. 103.

George H. Bowers, for administrators.

Thomas Spratt and George E. Van Kennen for respondent Lawrence Russell.

HERRIMAN, S.   This is an application by the administrators for a reopening of the decree made herein upon the 5th day of October, 1917, settling their accounts and ordering a distribution of the estate, upon the ground that moneys belonging to the estate, and which ought to have been included in their accounts, have been collected by Lawrence Russell, while acting as attorney for the administrators, and have been retained by him and never turned over to the administrators, and were omitted from their accounts; that such collections and the retention of the proceeds thereof by Russell were unknown to the adminstrators, and that the accounts, which were prepared by Russell, were signed and verified by the administrators in the belief that they correctly stated all matters pertaining to the estate and all moneys and property for which they should account; that their first information that Russell had collected these moneys was from admissions by him after the entry of the decree, and from a written statement afterwards made by him and filed in the office of the surrogate; and that prior to obtaining such information the administrators supposed that the obligations belonging to the estate upon which the collections had been made were still in existence as assets of the estate to be turned over to the beneficiaries.   While the decree of October 5, 1917, was a final decree of settlement and distribution, it directed the administrators to assign to the beneficiaries the unliquidated assets of the estate, and provided that any party might apply at the foot of the decree for further relief.

Upon the filing of the petition of the administrators

a citation was issued directed to all persons interested in the estate, including said Russell, requiring them to show cause why the decree of October 5, 1917, should not be opened and the administrators permitted to file a supplemental account and said Russell required to furnish information necessary to that end, and why a decree should not be made settling such accounts and determining the rights of all parties, including said Russell.

Upon the return of this citation Russell appeared specially by his counsel and filed objections to the jurisdiction of the Surrogate's Court to hear the matter, denying the power of the court to exercise any authority in the matter so far as he was concerned, upon the ground that it involved a dispute as to his charges for services as attorney for the administrators which this court had no jurisdiction to try without his consent.

This objection being overruled, counsel for Russell asked leave to file an answer to the petition, which was granted and an adjournment was taken to February 27, 1918. The answer was filed February twenty-third. It reiterates the plea of lack of jurisdiction in the Surrogate's Court, but fails to deny any of the material allegations of the petition, except that it denies any knowledge or information sufficient to form a belief as to whether the administrators " honestly supposed they had accounted for all the property and assets of the estate which had come into their hands at the time of the entry of the decree," but it alleges that the written statement made by him and above mentioned is a " full, true, complete and accurate statement of all of his receipts and disbursements in connection with said estate, and of the sums charged for various services in connection therewith, showing a balance due from said estate to him $934.72."

Surrogate's Court, St. Lawrence County, March, 1918. [Vol. 103.

He alleges that upon or about the 15th day of February, 1918 (after the service upon him of the citation in this proceeding), he began an action in the Supreme Court against Hulett and Dollar, the administrators, for the collection of this sum. This action is against the administrators personally and not in their representative capacity.

Upon the adjourned day the administrators and Russell appeared with their respective counsel and each of the administrators denied under oath any knowledge whatever of Russell's collection and appropriation of any of the funds of the estate until after the entry of the decree of October 5, 1917, and declared that it was only after they had learned of such collections that Russell said that he would prepare a statement showing his acts and doings in connection with the estate. Russell offered no proof in contradiction of this testimony. He offers no explanation of his action in having the administrators, his clients, make oath, as they did, that their accounts as filed " contained a full and true statement of all their receipts and disbursements on account of the estate or fund, and of all money and other property belonging to the estate or fund which had come to their hands or been received by any other person by their order or authority for their use." He gives no reason why, if the estate owed him a balance of $934.72, he made no mention of it when the entire estate was to be distributed to the beneficiaries, one of them an infant, and when Hulett, the active administrator, would have no means of paying this balance except with his own funds, as he was not a beneficiary of the estate. He offers no explanation of the fact that after the entry of the decree of October 5, 1917, he drew and had executed assignments from the administrators to the beneficiaries of all uncollected claims belonging to the

estate, so that nothing whatever remained in the hands of the administrators with which to pay this balance of $934.72. His conduct indicates an intention on his part, in the first instance, to conceal the collection by him of these moneys belonging to the estate, and later an effort to escape an investigation of the matter by showing that he had made counter charges against the estate which would more than offset the amount of the collections. His attitude is one of arrogant disregard of the proprieties which ought to accompany the administration of a trust estate, and of contemptuous indifference to all interests except his own.

Upon the uncontradicted record as it now stands, and according to his own statement, Russell received in the course of the administration of the estate allowances made to him by the court amounting to $800. He was paid various sums by the administrators on account of his services and disbursements amounting to $1,386.67. And he collected and retained, without the knowledge or consent of the administrators, moneys belonging to the estate aggregating $3,274.97. It is this latter sum which the administrators now ask to have included as assets of the estate and accounted for in the regular manner exactly as other assets which were included in the inventory and charged to the administrators. To this Russell objects. His idea seems to be that when these moneys reached his hands and were appropriated by him they ceased to be trust funds over which the court had any jurisdiction, if he saw fit to credit them to the estate making a counter charge for alleged services and disbursements, and that he could then take refuge behind his own books as a sanctuary where he would be immune from all investigation or criticism. It certainly has never been held, and so far as I know has never previously been contended, that an attorney, himself an officer of the

court, might thus deal with a fund which is peculiarly the subject of the court's jurisdiction.

That Surrogates' Courts now have the same powers of control over the conduct of attorneys practicing in those courts that other courts of record have under like circumstances is no longer open to question; and the attorney may be either petitioner or respondent in any proceding concerning an estate over which the court has jurisdiction. *Matter of Smith,* 111 App. Div. 23; *Matter of Regan,* 167 N. Y. 338; *Matter of Fitzsimons,* 174 N. Y. 15; Jessup Redf. Surr. 156 *et seq.* and cases cited. It is also well settled that where a controversy arises over funds of the estate which have been collected by the attorney the court may require the attorney to deposit the funds to the credit of the estate pending the determination of the rights of the parties. *Matter of De Oraindi,* 9 N. Y. Supp. 873; *Matter of Rowland,* 55 App. Div. 66. It seems to me that such an order would be proper in this matter at the present time.

An order should therefore be entered requiring the respondent Russell to pay into court by depositing with the county treasurer, to the credit of this estate and subject to the further order of the court, the said sum of $3,274.97, such payment to be made within ten days after service upon the respondent of a certified copy of the order. The order should further provide that, after such payment, either party may apply for the fixing of a time for a further hearing at which the rights and claims of all parties will be heard. Such an order may be drawn and presented for signing on two days' notice.

Decreed accordingly.