HERMAN STEINKAMP, Plaintiff, *v.* BRISTOL HOLDING CO., INC., and Others, Defendants, Impleaded with JULIUS WEIMAN, as Administrator, etc., of ANNA WEIMAN, Deceased, Appellant. HENRY LICHTIG, Special Guardian, Respondent.

First Department, May 4, 1934.

*Jacob M. Robbins*, for the appellant.

*David M. Berger* of counsel [*Henry Lichtig*, attorney], for the respondent.

MARTIN, J. In this action to foreclose a mortgage the court directed the payment of an allowance from the surplus money to a special guardian, who served as such in an entirely independent proceeding in the Surrogate's Court. The order directs the chamberlain to pay the sum of $300 out of moneys deposited with him to the credit of this foreclosure action, although the special guardian has never been a party thereto. Prior to making the application for this order he neither appeared personally herein,

nor on behalf of any of the parties hereto, and has had no connection whatever with this action.

The appellant says that the propriety of granting the order appealed from depends upon the validity of that part of a decree of the Surrogate's Court, Bronx county, judicially settling the administrator's account, which directed that Julius Weiman, individually, pay the sum allowed to respondent for services rendered as special guardian in that proceeding.

Anna Weiman, the wife of the appellant, died a resident of Bronx county shortly prior to the institution of this foreclosure suit. Upon her death the appellant filed a $250 administrator's bond and was duly appointed administrator of her estate by virtue of letters of administration issued to him on April 30, 1932. In addition to the appellant, Anna Weiman left surviving an adult unmarried daughter, Beatrice Weiman, and a son, Alexander M. Weiman, an infant over the age of fourteen years. Some time after the appellant qualified as administrator of his wife's estate, his daughter, Beatrice Weiman, petitioned the surrogate for his removal as administrator. The basis for the daughter's application was the claim that her mother had died possessed of property in excess of $63,000 instead of the nominal amount for which appellant had filed his administrator's bond.

The surrogate denied the application for the removal of Julius Weiman as administrator upon condition that he file a bond in the sum of $50,000. This he refused to do, claiming that he had paid for the various properties which were in his wife's name at the time of her death, and that they were held by her in trust for him under an agreement to reconvey upon demand. In consequence of his refusal to file the required bond he was removed as administrator on November 4, 1932. After the decree revoking the letters of administration of Julius Weiman was entered, the appellant sought to judicially settle his account and made application therefor on November 9, 1932.

In the proceeding to settle the account of the administrator, Henry Lichtig, the respondent, was appointed special guardian of Alexander M. Weiman, decedent's infant son. The duty of the guardian was to defeat, if unfounded, the claim of Julius Weiman, who has now been directed to personally pay for such services although he successfully defended his claim to the entire fund.

In his accounting in the Surrogate's Court, Mr. Weiman established that the assets of the decedent consisted of clothing and a gold wedding ring, aggregating in value the sum of twenty dollars, and that the funeral and other expenses incurred in the administration of the estate amounted to $398. At the time of

her death there stood in the name of the decedent a one-half interest in the mortgage foreclosed in this action and the appellant claimed that he intended to establish his title to the one-half interest in the mortgage at the hearing of the objections thereto. Objections to the voluntary account were filed by the administratrix *de bonis non* and the special guardian on the ground that the administrator had failed to account for the one-half interest in the mortgage. The objections were overruled.

Thereafter two orders were made at Special Term in this foreclosure suit, one settling the account of the receiver and the other confirming the referee's sale. These orders resulted in a surplus of $2,144.69, which was deposited with the chamberlain of the city of New York to the credit of the foreclosure action. This was done despite the claim of the appellant herein that said moneys should be turned over to him, individually, because the half interest in the foreclosed property had been adjudicated by the surrogate to belong to him. Both orders provided that in the event that the administratrix *de bonis non* and the special guardian did not diligently prosecute the appeal taken by them from the decree of the surrogate, then Julius Weiman might apply to the court for a modification of both orders as to the disposition of the proceeds thus deposited with the city chamberlain.

This court affirmed the decree of the surrogate and denied leave to the objectants to appeal to the Court of Appeals. (*Matter of Weiman*, 240 App. Div. 829; Id. 954.)

The respondent thereafter made application to the Special Term, Bronx county, for an order directing the chamberlain of the city of New York to pay to him $300, with interest thereon from the 18th day of March, 1933. This motion was based upon the above facts, and upon the express statement of Mr. Lichtig " that the money in the hands of the chamberlain is the property of Julius Weiman, individually." The motion was granted, and resulted in the first order here for consideration.

Immediately thereafter appellant discovered that Mr. Lichtig was engaged in making an application to the Court of Appeals for leave to appeal to that court from the aforementioned decree of the surrogate as affirmed by this court. The appellant at once sought leave, by order to show cause, to renew his opposition to Mr. Lichtig's former motion, which had just been granted, based on the fact that Mr. Lichtig was actually contending before the Court of Appeals that the moneys deposited with the chamberlain to the account of this action were the property of the estate of Anna Weiman, deceased, whereas he had urged as the basis for his motion at Special Term, that said moneys

were the individual 'funds of Julius Weiman. The motion was denied.

The appellant contends that the court was without power to charge him individually with the payment of the allowance of the special guardian and in addition that it had no jurisdiction over his personal property; that by the decree signed by the surrogate it was determined that Julius Weiman, as administrator, was not required to account for the one-half interest in the bond and mortgage and other property, because such property was his individually and it constituted no part of the estate. It was in the same decree that the surrogate ordered Julius Weiman, individually, to pay to the special guardian the sum of $300 for his services as special guardian.

The surrogate's decree which directs the payment to be made by Julius Weiman, individually, does not specify any fund from which it is to be paid. If an attempt to enforce that decree were made it could be successfully resisted. Any order made in an effort to carry out its terms would be unenforcible. By the order herein, the Supreme Court is not only attempting to enforce the order of the Surrogate's Court, but in addition directs the payment of the fee of the special guardian from a fund in a foreclosure action in the Supreme Court.

We are of the opinion that the provision contained in the decree directing payment and the subsequent order based thereon are unenforcible. Under the circumstances here disclosed the court had no power to direct that an individual pay the fee of a special guardian out of his own funds especially in view of the fact that the sole effort of the special guardian was to defeat Julius Weiman's claim. This court has held that such a decree or order is void for want of jurisdiction.

The sole provision with respect to compensation of a special guardian is contained in section 280 of the Surrogate's Court Act, which provides: " Compensation of special guardian. A special guardian for an infant or incompetent shall receive a reasonable compensation for his services to be fixed by the surrogate, payable from the estate or fund, or from the interest of the ward therein, or from both in such proportion as the surrogate may direct."

In *Matter of Runk* (200 N. Y. 447) the court said: " It is to be emphasized that they [Surrogates' Courts] are still courts which possess no jurisdiction except such as has been specially conferred by statute, together with such incidental powers as may be requisite to enable them to effectually exercise the jurisdiction actually granted." (See, also, *Matter of Small*, 158 N. Y. 128.)

The Court of Appeals, in *Livingston* v. *Ward* (248 N. Y. 193), quoted approvingly from *Matter of Thaw* (182 App. Div. 368),

to the effect that allowances " may be made to special guardians payable out of the estate, at least in cases ' in which the services of the guardian are shown to be of value not only to the immediate ward or wards, but also to the owners of the estate or fund out of whose pockets the allowance is to be taken.' "

This court, in *Matter of Lake* (219 App. Div. 530), said: " The jurisdiction of the surrogate to direct payment of counsel fees is defined by section 231-a of the Surrogate's Court Act. His power thereunder is to direct payment ' from the estate generally or from the funds in the hands of the representative belonging to any legatee, devisee, distributee or person interested therein.' He has no power to direct payment otherwise by any individual (*Matter of Smith*, 111 App. Div. 23, 31), nor is his power enlarged by section 475 of the Judiciary Law which gives merely power to ' enforce the lien.' The order of June 16, 1926, is, therefore, void for want for jurisdiction."

The surrogate had no jurisdiction over the fund deposited in the office of the chamberlain as a result of the foreclosure action litigated in the Supreme Court, the title to which was at all times in a third party. The attempt, therefore, to make Julius Weiman pay the special guardian by directing payment from that fund must fail.

The order herein granting the motion directing the city chamberlain to pay out funds to the respondent should be reversed, with twenty dollars costs and disbursements, and the motion denied. The appeal from the second order should be dismissed.

Finch, P. J., Merrell, O'Malley and Untermyer, JJ., concur.

Order entered on or about January 5, 1934, reversed, with twenty dollars costs and disbursements, and motion denied. Appeal from order entered on or about January 8, 1934, dismissed.