BENEDICT *vs.* STUART.

An agreement, between attorney and client, by which the former is to receive a specified sum to begin with, and the taxable costs and a certain per centage upon the amount recovered of the defendant in an action to be commenced, without any understanding that the suit shall be carried on or maintained *at his own expense,* does not amount to *champerty,* and is not void nor illegal.

The provisions of § 103 of the code are sufficiently broad and comprehensive to include and legalize such a transaction, assuming that it would, under any previous statute or statutes, have been unlawful.

APPEAL from a judgment entered upon a report of referees. The plaintiff sued upon a contract made in August, 1854, between him and his partner, Martindale, of the first part, and the defendant, of the second part, relative to the prosecution of an action against the New York Central Rail Road Company, in favor of the defendant. The interest of Martindale, in the contract, had been assigned to the plaintiff. The referees reported that the contract was illegal and void, and that the plaintiff was not entitled to recover. The plaintiff appealed.

*S. Mathews,* for the plaintiff.

*H. R. Selden,* for the defendant.

*By the Court,* WELLES, J. The plaintiff and his partner, Mr. Martindale, being practicing attorneys and counsellors of this state, entered into a contract with the defendant, who had a cause of action against the New York Central Rail Road Company, for a personal injury sustained by him as a passenger, by reason of a collision on said rail road; by which agreement, the plaintiff and Martindale were to commence and prosecute an action in favor of the defendant against said rail road company, for such cause of action; for which services the defendant should pay or secure them $50 to begin with, and they to have the taxable costs, and twenty per cent of the amount recovered in said action. That is substantially the agreement alleged in the complaint, and proved on the trial.

Benedict *v.* Stuart.

It is claimed by the defendant's counsel that this contract amounted to champerty, and was therefore illegal and void. The common law definition of champerty, is, a bargain with a plaintiff or defendant to divide the land or other matter sued for, between them if they prevail at law; *whereupon the champerter is to carry on the party's suit at his own expense.* (4 *Bl. Com.* 135.) This is, substantially, the definition given in all the books. It will be perceived that an essential ingredient of the crime as thus defined, is the agreement that the party prosecuting a suit for another, shall do it *at his own expense.* It is a species of maintenance, which consists in maintaining or assisting either party to a suit, by money or otherwise, to prosecute or defend. Common barratry, champerty, maintenance and embracery were all offenses of a kindred nature, the evils of which were the promotion of unjust, vexatious or needless law suits, and of a litigious and quarrelsome spirit, as also the obstruction and contamination of the fountains and channels of justice; and were crimes against public order, peace and morality. In regard to champerty, by excluding the fact that the individual accused, maintains or prosecutes the suit *at his own expense,* the principal attribute or quality of the offense is wanting, and without which, it cannot exist. It does not appear that the plaintiff and his partner, in the case under consideration, were under any obligation to carry on the action against the rail road company at their own expense; on the contrary, the intendment is, that it was to be done at the defendant's expense entirely. That part of the bargain—that the plaintiff and Mr. Martindale were to have twenty per cent of the amount to be recovered, which is the only feature of the transaction claimed to be champertous, would, when viewed in connection with the other parts of the agreement, tend to repress, rather than promote, a litigation between the defendant and the rail road company. It was nothing more nor less than an agreement between attorney and client for a contingent reward for professional services to be rendered by the former, in an action, to be graduated by the amount to be recovered; a method agreed upon between the parties for fixing the measure of com-

pensation to the attorney and counsel. This, without an agreement to maintain the suit at the expense of the attorney, does not, in my opinion, constitute champerty, at common law. There have been a variety of statutory enactments, both in England and this country, from the time of the reign of Edward 1st, to the present, by which acts not embraced in the common law definitions of barratry, champerty, embracery or maintenance, and which were not punishable at common law as crimes against the public, have been declared misdemeanors, and respectively classed under one or the other of those offenses, and their punishment prescribed. Many, if not the most of the adjudged cases in the books of a modern date, have been decided in view of such enactments. I have not considered whether the case before us falls under the denunciation of any or either of those statutes, or within any of those adjudications where the acts were held to be forbidden by law. I have deemed it unnecessary to do so ; for the reason, that, in my judgment, all such legislation is repealed by § 103 of the code, which provides that " all statutes establishing or regulating the costs or fees of attorneys, solicitors and counsel in civil actions, and all existing rules and provisions of law, restricting or controlling the right of a party to agree with an attorney, solicitor or counsel for his compensation, are repealed, and hereafter the measure of such compensation shall be left to the agreement, express or implied, of the parties." This language is broad and comprehensive, and sufficient to include and legalize the transaction between these parties, assuming that it would, under any previous statute or statutes, have been unlawful.

How far the common law definition of champerty, as now found in elementary treatises, is taken from old statutes, which centuries since have been repealed or superseded by other statutes, it may be difficult to determine. However that may be, they, with all other existing provisions of law on the subject as applied to agreements between attorneys and counsel with their clients respecting compensation to the former, are swept away by the section of the code referred to. There has been no direct adjudication on this subject that I have met with since the

code was enacted. In the case of *Satterlee* v. *Frazer*, (2 *Sandf. S. C. R.* 141, 2,) although decided on another ground, and the contract in that case was made before the code, the court say: "The code of procedure appears to have changed the law in this respect, and to enables parties to make such bargains as they please, with their attorneys."

In the case before us, there is no complaint of fraud, unfairness or overreaching. In a proper case, there can be no doubt of the power or duty of the court to punish an attorney, or render summary justice to the client who has been made the victim of such dishonest practices. (*Bary* v. *Whitney*, 1 *Code Rep. N. S.* 101.) Upon the whole, we perceive no illegality in the agreement in question which the referees held was illegal and void; and the judgment should therefore be reversed and a new trial ordered, with costs to abide the event.

Ordered accordingly.

[MONROE GENERAL TERM, December 1, 1856.  *T. R. Strong, Welles* and *Smith,* Justices.]