In the Matter of the Accounting of MARY E. FITZSIMONS, as Administratrix de bonis non of ANN CASSIDY, Deceased, Respondent.

In the Matter of the Application of I. NEWTON WILLIAMS, Appellant, to Enforce an Attorney's Lien.

1. APPEAL — SURROGATE'S COURT — FINAL ORDER IN SPECIAL PROCEEDING. An order of the Appellate Division reversing an order of the Surrogate's Court, which, upon the petition of an attorney for the contestant, continued a proceeding for a compulsory accounting by an administratrix who had made a secret and collusive settlement with his client and had procured his agreement to withdraw his objections and his consent that her account be allowed as filed, for the purpose of allowing the attorney, who claimed a lien upon any recovery to which his client would have been entitled on the accounting, to establish such lien, which order of the Appellate Division denied and dismissed the petition, ordered the objections to the account withdrawn and the account as filed approved, is a final order in a special proceeding and is reviewable by the Court of Appeals.

2. ATTORNEY AND CLIENT — CHAMPERTY. An agreement between an attorney and client by which the former is to be paid one-half of any money that should be obtained in a litigation about to be instituted, out of which amount he agrees to compensate an attorney associated with him in the case, is not champertous within the meaning of section 74 of the Code of Civil Procedure.

3. UNCONSCIONABLE AGREEMENT. The mere fact that the attorney was to receive one-half of the recovery does not render the agreement unconscionable in the absence of proof that it was induced by fraud or that the compensation provided for was so excessive as to evince a purpose to obtain an improper or undue advantage.

*Matter of Fitzsimons,* 77 App. Div. 345, reversed.

(Argued February 9, 1903; decided February 24, 1903.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered January 30, 1903, reversing an order of the New York County Surrogate's Court and dismissing the appellant's proceeding to establish and enforce an attorney's lien and denying him the relief prayed for in his petition therein.

The facts, so far as material, are stated in the opinion.

*Henry W. Jessup* and *I. Newton Williams* for appellant. The appellant has a lien under section 66 of the Code of Civil Procedure. (*Matter of Regan*, 167 N. Y. 338.) The agreement was not champertous. (*Fowler* v. *Cullen*, 102 N. Y. 395 ; *Zogbaum* v. *Parker*, 55 N. Y. 120 ; *Benedict* v. *Stuart*, 23 Barb. 420; *Lathrop* v. *Amherst*, 9 Metc. 492 ; *Fonda* v. *Parker*, 11 M. & W. 675 ; *Wetmore* v. *Hegeman*, 12 Wkly. Dig. 403.) The agreement is not unconscionable. (*Hall* v. *Gird*, 7 Hill, 586 ; *Brown* v. *West*, 9 App. Div. 135 ; *Whitaker* v. *N. Y. & H. R. R. Co.*, 3 N. Y. S. R. 537; *Keeler* v. *Keeler*, 21 N. Y. S. R. 66 ; *Blaisdell* v. *Ahern*, 144 Mass. 393 ; *Peri* v. *N. Y. C. & H. R. R. R. Co.*, 152 N. Y. 521.)

*Charles E. Miller* and *Bayard L. Peck* for respondent. The amendment in 1899 of section 66 of the Code, by adding " The court, upon the petition of a client or attorney, may determine and enforce the lien," was designed to apply to a controversy between the plaintiff and his attorney, and not to a controversy between the plaintiff's attorney and the defendant. (*Rochfort* v. *M. S. R. R. Co.*, 50 App. Div. 261 ; *Matter of King*, 168 N. Y. 53.) The alleged agreement by appellant with McNally refers to a prior agreement between McNally and appellant, whereby McNally assigned to the appellant as his attorney, and also the attorney for his son, one-half of any amount which the attorney would secure for him on the death of his son, as his son's heir at law and next of kin. Such an agreement is infected with fraud. (Story's Eq. Juris. [12th ed.] § 334 ; *Peacock* v. *Evans*, 16 Ves. 514.) The agreement of appellant with Michael McNally is champertous. (Code Civ. Pro. § 74.)

MARTIN, J. On August 27th, 1897, Ann Cassidy died in the city of New York leaving her surviving as her only heirs at law and next of kin a sister, Mary E. Fitzsimons, a brother, Peter A. Cassidy, and a nephew, John P. McNally. About ten days before her death she delivered to Father

Colton, rector of St. Stephen's Roman Catholic Church, eighteen or twenty bank books belonging to her, and requested him to collect the sums due thereon, amounting to $71,481.93, declaring that she would subsequently inform him what disposition to make of the money when so collected. He collected that amount, but the intestate never gave him any instructions or information as to the disposition she desired made of the amount thus received by him. Subsequently to her death he delivered to Mary E. Fitzsimons $12,931.63 and an equal amount to Peter A. Cassidy. He also delivered to the latter, who had been appointed administrator of the estate of Ann Cassidy, deceased, as such administrator, the further sum of $43,618.66 to protect the rights of John P. McNally as one of the next of kin and heirs at law of the decedent. This sum Peter A. Cassidy deposited for the estate with the New York Life Insurance and Trust Company in his name as such administrator. He afterwards died and Mary E. Fitzsimons was appointed as administratrix *de bonis non*. Soon after her appointment she withdrew from the insurance and trust company the amount so deposited by Peter, and secretly and without any notice to John P. McNally, his father or his committee, divided it between herself and Mary L. Cassidy, the widow of Peter A. Cassidy, to the exclusion of John P. McNally and the parties representing him or his interest therein. At the time of the death of Ann Cassidy, John P. McNally was and had been for years insane and confined in an asylum in the state of New Jersey, of whom William Harrigan had been duly appointed a committee both of his person and estate by the Supreme Court of the state of New York. The appellant's first retainer was by such committee, by whom he was employed as attorney to discover and obtain the property belonging to such estate in which his ward had an interest, which arrangement or retainer was made with the consent and approval of Michael McNally, the father of such incompetent. After the death of John P. McNally leaving his father his only next of kin and heir at law, the latter under and by a written agreement retained the appel-

2

lant as his attorney to discover and secure all the property to which he was entitled as heir at law and next of kin of his deceased son in the estate of Ann Cassidy, and agreed to pay him in full compensation for his services one-half of the property that should be recovered. He also thereby assigned and set over to the appellant one-half of all the property which he thus inherited. The appellant accepted the employment and agreed tó perform the necessary services and likewise to pay out of the compensation he should thus receive the claim of Robert S. Pelletreau for his services therein, who was also then employed to act and acted as one of the attorneys in the case in conjunction with the appellant. Of this agreement notice was given to all the parties interested in the estate.

In 1901 proceedings were instituted by the appellant as such attorney in the Surrogate's Court of the county of New York to compel Mary E. Fitzsimons, as administratrix of the estate of Ann Cassidy, deceased, to account as such for the estate of her intestate. She thereupon filed an account in the form of an affidavit, in which she averred that she never received any property of any kind or description belonging to the estate of the decedent. The appellant, as attorney for McNally and Harrigan, administrators of the estate of John P. McNally, deceased, then filed objections to the account, charging the administratrix with having received upwards of forty thousand dollars in cash and of being legally responsible to account for eighty-five thousand dollars in addition thereto. After these objections were filed, the matter was, by the Surrogate's Court, referred to Charles H. Beckett, Esq., to take proof thereon. Thereafter such reference proceeded to a hearing and continued from time to time from the sixth of December, 1901, to the eighth of May, 1902. On the first of April, 1902, counsel for the administratrix offered in evidence before the referee a consent purporting to have been signed on March twenty-first by Michael McNally, one of the contestants of the account, withdrawing the objections and consenting that the account be judicially settled and allowed as filed. It is obvious from the record that this consent was

procured secretly and by collusion between the respondent and said McNally, who was insolvent and irresponsible. A motion was then made by the administratrix that the referee report to the court approving such account. This motion was opposed by the appellant upon the ground that he had a lien upon and an assignment of a part of the claim of McNally for his fees and compensation as such attorney, which should be first adjusted. The motion was denied. Subsequently a release by McNally was produced, the motion was renewed and was opposed upon the same ground. The matter was then brought before the Surrogate's Court where the same motion was made, and thereupon the appellant filed a petition setting forth the facts of his retainer as attorney, that he had a lien upon the claim of McNally for his fees and services performed under such retainer, had a written agreement therefor and an assignment of one-half of such claim, that the settlement was secret and collusive, and that his client was insolvent, and prayed that the motion might be denied and the reference continued to the end that his rights as such attorney under his agreement and under the provisions of the Code might be determined and enforced according to law. The record tends to show that after they had full notice of the appellant's claim and assignment, Mary E. Fitzsimons and Mary L. Cassidy by whom the property of the estate had been wrongfully appropriated, agreed with Michael McNally to pay the appellant and his associate their fees and compensation, and gave a bond in the penal sum of twenty thousand dollars to indemnify him against all their charges. Upon the presentation of the appellant's petition and the affidavits and other papers accompanying it, the motion of the administratrix was denied. She then appealed to the Appellate Division, which reversed the order denying her motion and dismissed and denied the petition of the appellant to have his lien as such attorney determined and enforced. It further ordered that the objections to the administratrix's account be withdrawn, the referee directed to report to the Surrogate's Court approving her account as filed, and that the

appellant pay to her ten dollars costs on the dismissal of his petition and ten dollars costs on the motion to withdraw. From that determination the appellant has appealed to this court.

The first question presented is whether the order appealed from was a final order in a special proceeding and reviewable by this court. A proceeding before the surrogate for a compulsory accounting by the administratrix was pending. The latter applied to have the objections to her account withdrawn and the proceedings terminated in her favor upon the consent of one of the original contestants. Upon the presentation of that motion to the Surrogate's Court, the appellant presented a petition setting forth facts entitling him to a part of any recovery to which his clients would be entitled upon such accounting and to compensation as attorney for the contestants. He also asked that his rights as such attorney under the agreement between himself and the contestants be determined in that proceeding and the proceeding continued for that purpose. That he had a right to present such a petition to the Surrogate's Court, and that it was the duty of the court to continue the proceeding for the purpose of enabling him to establish his right to the compensation claimed, especially as his client was insolvent and the alleged settlement was secret and collusive, is abundantly established by the plain provisions of the statute and the decisions of this court. (Code Civ. Pro. § 66; *Peri* v. *N. Y. C. & H. R. R. R. Co.*, 152 N. Y. 521; *Matter of Regan*, 167 N. Y. 338; *Matter of King*, 168 N. Y. 53; *Fischer-Hansen* v. *Brooklyn Heights R. R. Co.*, 173 N. Y. 492.) That the proceeding instituted by the appellant to establish his lien was a special proceeding which might be properly instituted in a Surrogate's Court there is now no doubt. Obviously the Surrogate's Court entertained that view and continued the proceeding for that purpose. But the Appellate Division dismissed the appellant's petition and denied his right to establish such lien before any evidence as to the facts had been given and with no proof before it except that set forth in the affidavits used upon the motion. The -

order of the Appellate Division dismissing the appellant's petition and denying his right to establish such lien was a final order in a special proceeding, and, therefore, appealable to this court.

This brings us to the consideration of the question whether the learned Appellate Division was justified in denying the appellant the relief sought and in dismissing his proceeding. The grounds upon which this determination was based were twofold: *First*, that the agreement entered into between the appellant and his client was champertous; and, *second*, that it was unconscionable.

*First*, then, was it champertous? Section 74 of the Code of Civil Procedure provides that "An attorney or counselor shall not by himself, or by or in the name of another person, either before or after action brought, promise to give, or procure to be promised or given, a valuable consideration to any person, as an inducement to placing, or in consideration of having placed, in his hands, or in the hands of another person, a demand of any kind, for the purpose of bringing an action thereon. But this section does not apply to an agreement between attorneys and counselors, or either, to divide between themselves the compensation to be received." The common-law doctrine relating to champerty and maintenance no longer exists in this state. (*Sedgwick* v. *Stanton*, 14 N. Y. 289.) The subject is now regulated by sections 73 and 74 of the Code of Civil Procedure. (*Irwin* v. *Curie*, 171 N. Y. 409, 411.) The first of these sections prohibits an attorney or counselor from buying a claim with the intent and for the purpose of bringing an action thereon, and has no application here. Under section 74 an attorney may agree upon his compensation, his agreement may be contingent upon his success and payable out of the proceeds of the litigation, and such contracts are not illegal, but are continually enforced. With the question whether the statute permitting such contracts is wise or otherwise we have nothing whatever to do. Such is the law, and if the agreement made by the appellant is within its protection it is valid and it is the duty of the courts to

enforce it. The learned Appellate Division were of the opinion that this contract fell within the condemnation of section 74, for the sole reason that the appellant agreed to pay out of such compensation as he should receive any claims that his associate attorney might have for services performed, or to be performed, by him in such litigation. It is to be observed that there was nothing in this agreement by which the appellant became personally responsible to pay his associate. The effect of the agreement was that the appellant was to have one-half of the recovery, and out of it, and not otherwise, was to compensate his associate. In other words, the real arrangement between the parties was that one-half of the recovery should be paid and received in full compensation for the services of the appellant and his associate. To say that by this provision the appellant had promised to give, or that there should be given to his clients, a valuable consideration as an inducement to placing the account in his hands, is not a fair construction of the agreement. Here was a fund being wrongfully secreted and retained by and with the consent of an administratrix, which, in part, belonged to the client of the appellant and his associate. The three being present, an agreement was entered into by which the attorneys were to have one-half of any property that could be found and recovered, to be delivered to Williams, and out of the property thus received by him he was to compensate his associate for his services. We think this agreement does not fall within the prohibition of section 74. As was in effect said by FINCH, J., in *Fowler* v. *Callan* (102 N. Y. 395, 398), the appellant neither sought the retainer nor did anything to induce it. So far as appears it was not occasioned by any offer or solicitation of his, but originated in the free and unprejudiced choice of the client. The agreement appears to have been purely one for compensation. The arrangement contemplated success, in which event one-half the recovery would pay both attorneys. The compensation for the services of both would be discharged out of the portion of the property which would come into the hands of the attorney for that precise purpose. The contract

in no respect induced or protracted the litigation. The appellant stirred up no strife, induced no litigation, but merely agreed to take for the compensation of himself and his associate, who was present at the time of the agreement and presumptively consented to it, one-half of the recovery to be divided between them as they should agree. The contention that this agreement was within the prohibition of section 74, and, therefore, void, cannot, we think, be upheld. (*Benedict* v. *Stuart*, 23 Barb. 420; *Peri* v. *N. Y. C. & H. R. R. R. Co.*, 152 N. Y. 521.) This case is clearly distinguishable from *Stedwell* v. *Hartmann* (74 App. Div. 126), as in that case the attorney was to pay all expenses, or, in other words, to himself maintain the suit, and it was held that such an agreement was champertous. Not so here. Here the appellant agreed merely for a compensation for the services of himself and his associate, payable out of the recovery.

The only remaining question is whether the agreement between the appellant and his associate and their client that the former should receive one-half of the recovery is unconscionable, and for that reason the appellant's proceeding should have been dismissed and his right to establish and enforce a lien for their compensation denied. In the first place it is difficult to see how the court below could have properly reached the conclusion that the agreement was unconscionable without proof as to the amount the appellant would have received if such lien had been established and enforced or of the entire services performed by the appellant and his associate, or of the actual expenses to which they were subjected and the other facts relating to the subject.

In view of the fact that by express statute the right is conferred upon an attorney or counselor to regulate the amount of his compensation by agreement with his client, which is unrestrained and unlimited by law, we cannot see how such an agreement can be interfered with and held illegal until the question has been fully and fairly investigated and the facts relating to the transaction plainly established by a trial. The statute conferred upon the parties the right to make the con-

tract, and conferred upon the court no authority to make it for them. If, however, upon a proper examination of the appellant's claim, it shall be found that the agreement between himself and his client was induced by fraud, or that the compensation provided for was so excessive as to evince a purpose to obtain improper or undue advantage, the court may correct any such abuse. Admitting that, it furnished no justification for the court's dismissal of the appellant's proceeding to establish an attorney's lien, when there was no proof as to the amount of labor performed, or the amount which would in fact be received by the attorney under the agreement made between them. As was said by BARTLETT, J., in the *Peri* case : "The settlement of a litigation ought, in fairness, to be made with full knowledge of plaintiff's attorney and under conditions protecting his lawful lien. If he seeks to take an unfair advantage of a desire to settle, he is, as an officer of the court, under its constant scrutiny and control, and will be confined in his lien to his taxable costs and such additional amount as he may be able to duly establish by agreement, express or implied."

In this case the amount of the estate was never clearly established. Nor were the character and extent of the services performed definitely proved. Indeed, there was no issue between the parties as to the fairness or propriety of the contract, but the only ground upon which the respondent sought an affirmance of her account upon the consent of one of the contestants, was that the attorneys had no right to proceed in the Surrogate's Court for the purpose of establishing their lien. In other words, the only question raised in the Surrogate's Court was as to its jurisdiction to continue the proceeding for the purpose of establishing and enforcing the attorney's lien. The Surrogate's Court held that it had such jurisdiction and denied the motion to approve the administratrix's account, thus in effect holding that the appellant had a right to contest the accounts of the administratrix and the release which was subsequently executed by the contestant to protect his right as assignee, as well as attorney therein. But

when the case reached the Appellate Division the question upon which the motion was decided by the court below was ignored, and that court held, as a matter of law, that the agreement was unconscionable. Under the circumstances it seems impossible that the learned Appellate Division had any jurisdiction to review that question when there was no issue raising it or trial presenting the facts relating thereto. Surely, the appellant could not properly be thrown out of court and have his petition dismissed and all relief denied, without an opportunity to be heard upon the question. If, after trial, when the question has been properly presented by proof, it shall be shown that the amount claimed was unconscionable, it is fair to presume that the trial court will make such disposition of the matter and establish the appellant's lien to such an extent only as shall be legal in view of the agreement between the parties. When that question has been passed upon by the trial court, it may be properly presented to the learned Appellate Division for review. But until it is so presented that court has no right to determine the question. "It is one of the fundamental principles of our law that questions of fact are to be tried and determined in a court of original jurisdiction, and it is not the appropriate function of an appellate court to determine controverted questions of fact and render final judgment upon such determination." (*Benedict* v. *Arnoux*, 154 N. Y. 715, 724.) This principle applies to an appeal from a final order in a special proceeding as well as from a judgment (Code Civ. Pro. § 1361), and the procedure and rights of the parties upon an appeal from such an order are to be considered in the same manner, subject to the same powers and limitations as an action where the same issues are involved. (*People ex rel. Manhattan R. Co.* v. *Barker*, 152 N. Y. 417; *Matter of Chapman*, 162 N. Y. 456, 460.)

Thus we are led to the conclusion that the learned Appellate Division erred in dismissing the plaintiff's petition and denying him the relief sought, when there had been no investigation or trial as to the facts, and that the order of the Appellate Division should be wholly reversed and the pro-

ceeding remitted to the Surrogate's Court for further action thereon.

The order of the Appellate Division should be reversed and the order of the Surrogate's Court affirmed, with costs to abide the final award of costs in the proceeding.

PARKER, Ch. J., GRAY, O'BRIEN, HAIGHT, VANN and WERNER, JJ., concur.

Order reversed, etc.