(112 App. Div. 150)

### RANSOM et al. v. CUTTING et al.

(Supreme Court, Appellate Division, First Department. April 6, 1906.)

1. ATTORNEY AND CLIENT—CONTRACT FOR FEES—REASONABLENESS.

Defendant C., having been disinherited by his father, who died leaving a very large estate, employed plaintiffs to oppose the probate of his father's will by a contract assigning to plaintiffs 40 per cent. of any and all recovery, to be reduced to 33⅓ per cent. if the contemplated litigation

was ended by a decision of the surrogate, and to 10 per cent. in the event of a settlement realizing $50,000 or more; plaintiffs agreeing not to call on C. for money to pay disbursements required in such proceedings. Plaintiffs succeeded in obtaining a settlement of the controversy by which C. was paid $30,000 in cash, and secured an annuity of $4,000. *Held* that, in the absence of fraud, such contract was not unconscionable.

2. CHAMPERTY AND MAINTENANCE—CONTRACT FOR ATTORNEYS' SERVICES—CONSTRUCTION.

Where an unsolicited contract for attorneys' services provided for payment of a percentage of the recovery, and the attorneys agreed not to call on the client for any money to pay necessary disbursements required in the proceedings, it should be construed as providing that the percentage should be figured after deducting the expense incurred from the recovery, and was not therefore void for champerty.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Champerty and Maintenance, §§ 22–51.]

3. ATTORNEY AND CLIENT—LIENS—ENFORCEMENT—EQUITY.

Where, under an agreement for attorneys' services, the attorneys were entitled to 10 per cent. of the proceeds of an annuity as the same was paid, with a lien to secure payment thereof, and both the trust company obligated to pay such annuity and the annuitant refused to recognize the attorneys' claim, their remedy was by a suit in equity to enforce their lien.

Appeal from Special Term, New York County.

Action by Rastus S. Ransom and others against Robert L. Cutting, impleaded with the Farmers' Loan & Trust Company. From a decree in favor of plaintiffs, defendant Cutting appeals. Affirmed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, LAUGHLIN, and HOUGHTON, JJ.

Franklin Bartlett, for appellant.

William H. Hamilton, for respondents.

McLAUGHLIN, J. In January, 1894, one Robert L. Cutting died, leaving a will by which he gave all of his property, with the exception of an annuity to his widow, to one of his sons, James De Wolfe Cutting. The other son, Robert L. Cutting, the appellant, feeling that he had been unjustly treated, and that the instrument offered for probate did not correctly express his father's wish, retained the plaintiffs, a firm of lawyers, to oppose the probate of the will. He was unable financially to pay the plaintiffs, and, for the purpose of securing them for the services to be rendered in his behalf, he entered into an agreement with them on the 1st of February, 1894, by the terms of which he agreed, "in consideration of legal services heretofore and hereafter to be rendered," to assign, transfer, and set over to them "forty per cent. of any and all recovery" which he should receive, which per cent., however, was to be reduced to 33⅓ per cent. provided the contemplated litigation was ended by the decision of the surrogate, and to 10 per cent. in the event of a settlement realizing $50,000 or more. The agreement further provided that the plaintiffs should not "call upon the said Robert L. Cutting * * * for any sum or sums of money to pay the necessary disbursements required in the said proceedings." The plaintiffs, under their retainer and the agreement referred to, rendered services as attorneys for the appellant in proceedings to compel an accounting of his grandfather's estate, as well as in the Surrogate's Court

to prevent the probate of his father's will. Their efforts were success-
ful, because they obtained a settlement and compromise by which he
was paid $30,000 in cash, and to be thereafter paid an annuity of $4,-
000; payment of which was secured by a deposit with the defendant
trust company of $95,000. The appellant, appreciating the value of the
services rendered for him by the plaintiffs and the validity of the agree- ·
ment which he had entered into with them, when he received the $30,000
in cash paid them the 10 per cent. stipulated, and thereafter for a certain
time paid them 10 per cent. of the annuity received from the trust
company. Subsequently, however, he refused to pay the plaintiffs the
10 per cent. stipulated on the annuity, and repudiated the agreement;
whereupon this action was brought against him and the trust company
to enforce the same. The plaintiffs were successful; the trial court
holding that they had a lien to the extent of 10 per cent. on the annuity
as the same matured, which it directed should be paid by the trust
company, and Cutting alone has appealed.

The judgment is attacked principally upon the ground that the agree-
ment to pay the 10 per cent. is unconscionable, for which reason it
ought not to be enforced by a court of equity, and that it is also cham-
pertous, and therefore void, and cannot be enforced. Under the find-
ings of the trial court (and there is an abundance to sustain them),
the agreement cannot be said to be unconscionable. In Matter of
Fitzsimons, 174 N. Y. 15, 66 N. E. 554, it was held that the mere fact
that an attorney was to receive one-half of the recovery did not render
an agreement unconscionable, in the absence of proof that it was in-
duced by fraud, or that the compensation provided for was so ex-
cessive as to evince a purpose to obtain an improper or undue advan-
tage. There is not a suggestion in this record that there was any fraud
practiced upon the appellant in obtaining the agreement, or that he did
not when he executed it fully appreciate its legal effect. On the con-
trary, it appears that he did appreciate it, and subsequently recognized
it as binding upon him by paying 10 per cent. of the $30,000 received
when the settlement was made, and for several years thereafter paying
10 per cent. of the $4,000 annuity. An attorney or counsellor at law,
by express provision of statute, can agree with his client as to the
amount to be paid for services to be rendered (section 66, Code Civ.
Proc.), and an agreement made for that purpose, in the absence of evi-
dence showing that a fraud has been perpetrated on the client, or that
he did not fully understand the purport of the agreement, must be en-
forced like other contracts, according to its terms. The statute gives
the right to an attorney and client to make a contract as to the former's
compensation, and it is a matter of no importance, when the contract is
brought under review, what the compensation agreed to be paid is,
providing the contract is legal in other respects. The court cannot
make contracts for parties, and only has power to construe them as
made. If the contract as made were the result of a fraud practiced up-
on the client, or if it appeared that the compensation were so excessive,
in view of the services rendered, as to indicate that an improper or un-
due advantage had been taken of the client, then relief would be
afforded. But that is not this case. Here was a large estate, in which
the appellant, if his father's will were probated, had no interest what-

ever. He thought he had been wronged, and that the instrument sought to be probated was·not his father's will, and to prevent its probate he applied to the plaintiffs, and that the services rendered by them were very valuable to him is evidenced by the fact that a compromise was effected by which he received, not only $30,000 in cash, but an annuity of $4,000 so long as he should live. It cannot be said, therefore, especially in view of the findings and conclusions of the trial court to the contrary, that the amount agreed to be paid to the plaintiffs was so excessive as to indicate a purpose to obtain improper or undue advantage of the appellant.

Nor do I think it can be said the agreement was champertous. The entire claim of the appellant in this respect is based upon that part of the agreement which provided that the plaintiffs would not call upon the appellant to pay the disbursements incident to or necessarily incurred by the prosecution of the proposed litigation. It is true an attorney cannot, directly or indirectly, either before or after an action or proceeding is instituted, promise or give a valuable consideration to any person as an inducement to placing or having placed in his hands a demand of any kind for the purpose of bringing an action thereon. Section 74, Code Civ. Proc. But the plaintiffs did not seek the defendant. He voluntarily went to them, and, for the purpose of securing their services, made the agreement. The fact that they were not to call upon him to pay the expenses of the proceeding did not, upon its face, make the agreement bad. There is no express provision in it that the attorneys were to pay the expenses, and, even if that is fairly to be inferred, it does not prevent the agreement being enforced; because, if that be held, then ·the legal effect of it is that they were to have the 10 per cent. after deducting therefrom the expenses incurred; and in this respect the case in principle is precisely like Fowler v. Callan, 102 N. Y. 395, 7 N. E. 169. There the attorney expressly agreed to conduct for his client certain legal proceedings, and pay all the costs and expenses of the same, receiving as compensation a one-half interest in certain land, a deed of which was given, which was the subject-matter of the litigation. The attorney, having been successful in the litigation, thereafter brought an action of ejectment under the deed thus given to him. The defense was that the agreement was champertous. The trial court so held, and the same was affirmed by the late General Term of the Court of Common Pleas. The judgment, however, was reversed, the Court of Appeals holding that the contract was not in violation of the statutory provision, but was an agreement purely for compensation, and therefore valid. This case was cited with approval and followed in Matter of Fitzsimons, supra, where Judge Martin, in delivering the opinion (and his language is quite as applicable to this case as it was to that), said:

"The appellant neither sought the retainer, nor did anything to induce it. So far as appears, it was not occasioned by any offer or solicitation of his, but originated in the free and unprejudiced choice of the client. The agreement appears to have been purely one for compensation. The arrangement contemplated success, in which event one-half the recovery would pay both attorneys. The compensation for the services of both would be discharged out of the portion of the ·property which would come into the hands of the attorney for that precise purpose. The contract in no respect induced or

protracted the litigation. The appellant stirred up no strife, induced no litigation, but merely agreed to take for the compensation of himself and his associate, who was present at the time of the agreement, and presumptively consented to it, one-half of the recovery, to be divided between them as they should agree. The contention that this agreement was within the prohibition of section 74, and therefore void, cannot, we think, be upheld."

The agreement here under consideration, when construed in the light of the evidence and the findings of the trial court, was simply to the effect that the plaintiffs were to receive as compensation for the services to be rendered a certain percentage, payable out of the recovery. This did not make the agreement champertous, under the provision of the statute before referred to. In reaching this conclusion, the cases of Stedwell v. Hartman, 74 App. Div. 126, 77 N. Y. Supp. 498, affirmed 173 N. Y. 624, 66 N. E. 1117, and Begly v. Weddigen, 86 App. Div. 629, 83 N. Y. Supp. 805, and others cited by appellant's counsel, have not been overlooked.

The action was properly brought in equity. The trust company declined to recognize the validity of the agreement, and the appellant repudiated it. Therefore, there was nothing for the plaintiffs to do but enforce the lien which they had upon the annuity agreed to be paid. Fischer-Hansen v. Brooklyn Hts. R. R. Co., 173 N. Y. 492, 66 N. E. 395.

I am of the opinion that the judgment is right, and should be affirmed, with costs to the respondents. All concur.

PATTERSON, J. I concur fully in the views expressed by Mr. Justice McLAUGHLIN in his opinion in this case. Much was said upon the argument concerning the so-called "unconscionable" character of the agreement upon which the action was brought. There is nothing whatever in the record even to suggest that the agreement was of that character. The services rendered by the plaintiff's firm were of the greatest value to the defendant Cutting, and secured for him a result for which a compensation of 10 per cent. upon the amount realized cannot be called exorbitant. In view of what was accomplished by the plaintiff's firm, that compensation is reasonable. Mr. Cutting acquiesced in the contract with knowledge of all its bearings, and from time to time paid the amounts he agreed to pay, and thus repeatedly ratified it after abundant opportunity for consideration. In such circumstances, a party will not be heard upon a claim that the arrangement he assails is unconscionable. Kent v. Quicksilver Mining Co., 78 N. Y. 190.

LAUGHLIN, J., concurs.