Heffernan, J.
It is undisputed that on August 3, 1932, Clemente Contracting Co., Inc., a domestic corporation (hereafter referred to as Clemente), submitted to the State of New York its bid for the construction of a number of new buildings and additions to four existing buildings at Letchworth Village, Thiells, New York. The bid was accompanied by a certified check for $50,000 as a guarantee that the corporation would enter into ft *520 formal contract (State Finance Law, § 127). The bid was accepted by the State and a formal contract between the parties was executed on August 16, 1932. The contract price was substantial. The work was completed and accepted by the State on or about December 7,1936.
On August 15, 1932, Clemente filed in the office of the Secretary of State a certificate of voluntary dissolution.
Clemente asserted that the State breached the contract during its performance and in July, 1936, it retained attorney Benjamin McClung to prosecute its claim for damages. On December 8, 1936, it entered into a written retainer agreement with McClung whereby he agreed to prepare, file and prosecute the claim for a contingent fee of 50% plus expenses and disbursements. Thereafter McClung prepared and filed a claim on behalf of Clemente in which damages were sought on twenty different items in the sum of $225,000.
On May 1, 1940, the partnership of McClung, Peters and Simon was formed and, with the consent of Clemente, the retainer was turned over to the partnership. McClung died on November 9,1940, and, pursuant to an agreement with Clemente, respondents as surviving partners continued preparation of the claim for trial.
The executrix of McClung’s estate assigned to respondents all right and interest which decedent had for legal services in connection with the claim.
On September 14, 1944, Clemente executed and delivered to respondents a written confirmation of their continuing retainer upon the same basis as the original contingent retainer which had been entered into with McClung upon condition however that they should pay to the McClung estate the value of his legal services out of the contingent fee.
Respondents, with the consent of Clemente, employed two eminent lawyers, one of whom argued their case at our bar, who had extensive experience in construction claims against the State, and whose compensation was to be paid out of the contingent fee, to assist them in the preparation and trial of the claim.
The record discloses that extensive preparation of the cause for trial was necessary. Complicated issues of law and fact were involved. The trial occupied a period of eight days and resulted in a judgment in favor of Clemente for $46,963.17 from which no appeal was taken. Undoubtedly this judgment was obtained solely because of the careful preparation and the arduous and ¡aithful service of high quality of respondents and their counsel.
Prior to the commencement of these proceedings three judgments were rendered against Clemente which are unsatisfied and *521 appellant was appointed receiver in supplementary proceedings of the corporation. He filed notice of his claim with the State Comptroller as also did other alleged creditors.
Although no controversy existed between Clemente and respondents as to the right of the latter to receive out of the proceeds of the judgment the amount provided for their services under the contingent fee agreements the Comptroller declined to pay the same until all claims asserted against Clemente were discharged of record or until otherwise ordered by the court.
Accordingly on May 17, 1946, respondents presented to the Supreme Court their petition and a supporting affidavit and obtained an order from the court directing appellant, the Comptroller and all others who had filed notices of claims to show cause before the Albany Special Term of the Supreme Court on May 24,1946, why their lien should not be determined and paid in accordance with the provisions of section 475 of the Judiciary Law. The order and accompanying papers were served on all the parties in compliance with the provisions of such order.
Upon the return date of the order none of the parties appeared personally or by counsel except an Assistant Attorney-General who appeared for the Workmen’s Compensation Board and filed an opposing affidavit. Later, and when the court had the matter under consideration, appellant appeared generally in the proceedings, filing two affidavits, executed by his attorney and also an answer in opposition to the petition. Clemente also appeared in the proceedings and filed an affidavit verified by its president affirming the execution by that corporation of the written agreements of retainer.
The answer interposed by appellant contained denials upon information and belief of the paragraphs of the petition which allege the execution by Clemente and its attorneys of the retainer agreements. For a separate and complete defense it allges, in substance, that the contracts of retainer are void and unenforcible by reason of the fact that Clemente, on August 15,1932, filed with the Secretary of State a certificate of voluntary dissolution under section 105 of the Stock Corporation Law.
In one of the affidavits of his attorney appellant alleges that on May 18, 1946, he obtained consent- of the Supreme Court, Bronx County, to bring an action in which all parties having any claim to the proceeds of the judgment could assert the same. While respondents are named in the summons in that action they had not been served with process therein when this proceeding was heard and determined.
It is quite significant that notwithstanding the denials contained in the answer as to the execution of the retainer agree *522 ments the appellant in the affidavits of his attorney expressly admits that such agreements were in fact executed. But that is not all. In his brief in this court appellant likewise concedes the execution of such agreements. The formal denials in the answer were thereby nullified, and there was no triable issue at Special Term as to the execution of the retainer agreements and the fact that respondents were employed by, and rendered their srvices to, Clemente pursuant thereto.
The Special Term determined the amount of the respondents ’ lien in accordance with the agreements with Clemente and fixed the same at $24,208.41 which included disbursements of $726.83. The court also determined that the amount so fixed was fair and reasonable.
From the order of the Special Term appellant alone has come to this court.
Section 474 of the Judiciary Law provides that “ The compensation of an attorney or counsellor for his services is governed by agreement, express or implied, which is not restrained by law
Respondents ’ lien upon the future judgment was imposed by statute upon the filing of the claim. A proceeding under section 475 of the Judiciary Law, by an attorney who has procured a judgment for his client, is not to establish the lien but to have the court determine the amount thereof. Creditors of the client are not privy to the retainer agreement and are not necessary parties to a proceeding under this section to have the amount of the lien established. Creditors of the client may only assert and enforce their claims against the portion of the judgment remaining after the amount of the attorneys’ lien has been paid or otherwise discharged.
On this appeal appellant challenges the jurisdiction of the court below and asserts that the retainers are nullities and that respondents should be relegated to the action pending in Bronx County for relief.
Having appeared generally in the proceeding before the Special Term appellant may not now question the jurisdiction of that court (Knickerbocker Investment Co. v. Voorhees, 121 App. Div. 690; McClure Newspaper Syndicate v. Times Printing Co., 164 App. Div. 108; Braman v. Braman, 236 App. Div. 164; Citizens Trust Co. v Prescott & Son, Inc., 221 App. Div. 426).
The fact that Clemente filed a certificate of voluntary dissolution is immaterial. Such dissolution does not invalidate its retainer agreements with its attorneys. Clement executed the formal contract on August 16, 1932, as a means of discharging a corporate liability and obligation which it had incurred prior *523 to filing the certificate of dissolution (Sanders v. P. B. F. Co., 144 N. Y. 209; Pratt v. Hudson River R. R. Co., 21 N. Y. 305; Stentor Electric Mfg. Co. v. Klaxon Co., 115 F. 2d 268, revd. on other grounds, 313 U. S. 487; George W. Luft Co. v. Zande Cosmetic Co., 142 F. 2d 536).
A corporation which has filed a certificate of voluntary dissolution may sue (Stock Corporation Law, § 105; General Corporation Law, § 29) and consequently may retain attorneys to sue on claims for damages which have accrued to it. Under these statutory provisions a corporation may lawfully enter into an agreement of retainer fixing the fee to be paid for legal services required to be rendered to it in prosecuting such a claim.
In his opposing affidavit the attorney for appellant states as a mere conclusion that Clemente was insolvent when the attorneys were retained. No act of insolvency and no fact showing insolvency-is shown. No claim is made that the attorneys knew or had any notice of any alleged insolvency. Respondents deny that they had such knowledge. Certainly before accepting the retainer from Clemente the attorneys were not bound to conduct an investigation into its financial affairs in order to ascertain whether or not it had creditors.
Neither the answer nor the opposing affidavits raised any issue which entitled appellant, as a representative of certain creditors of the client, to challenge the agreement of retainer.
In the absence of proof that the written retainer agreements were fraudulently or otherwise wrongfully procured or entered into, they were binding upon both attorneys and the client, and consequently upon the creditors of the latter, and governed in determining the amount of the attorneys’ statutory lien upon the judgment (Ward v. Orsini, 243 N. Y. 123; Morehouse v. Brooklyn Heights R. R. Co., 185 N. Y. 520; Rodkinson v. Haecker, 248 N. Y. 480; Ransom v. Ransom, 147 App. Div. 835; Matter of Liebergall, 189 App. Div. 681).
The court is powerless to remake or change a contract of retainer validly made (Matter of Sasson, 231 App. Div. 524; Matter of Fitzsimons, 174 N. Y. 15, 23). A contract of retainer giving the attorney a contingent fee of 50% of an uncertain recovery is not unconscionable as a matter of law (Matter of Fitzsimons, supra; Morehouse v. Brooklyn Heights R. R. Co., supra; Ransom v. Ransom, supra).
The claims of the receiver, like claims of any creditor of Clemente, are subordinate, as matter of law, to the attorneys’ statutory lien upon the judgment (Bacon v. Schlesinger, 171 App. Div. 503; Jackson v. City of New York, 182 Misc. 686; Smith v. First National Bank, 184 App. Div. 719).
*524 The cases upon which appellant relies are all inapplicable here. The respondents are not seeking to enforce their lien against third parties and its payment by them as was attempted in cases such as Matter of Salant (158 App. Div. 697); Pilkington v. Brooklyn Heights R. R. Co. (49 App. Div. 22); Matter of Evans (58 App.. Div. 502); Rochfort v. Metropolitan Street R. Co. (50 App. Div. 261); Peri v. New York Central R. R. Co. (152 N. Y. 521); Fischer-Hansen v. Brooklyn Heights R. R. Co. (173 N. Y. 492). In such class of cases the judgment debtor settled the judgment directly with the judgment creditor; the judgment had been wrongfully satisfied in disregard of the attorney’s lien, and the various proceedings were undertaken to enforce payment of the amount of the attorney’s lien by such third party. Even in such cases it has been held that where the attorney’s fee had been clearly fixed by agreement of retainer, so that its terms were not open to dispute, summary proceedings under section 475 of the Judiciary Law, may properly be used by the attorney to enforce against the offending judgment debtor the lien which he had upon the judgment which has been wrongfully paid or satisfied in violation of his right (Matter of Jacobs, 169 Misc. 893; Matter of Salant, supra).
Appellant relies principally on Matter of Salant (supra) and Domestic Dryer Corp. v. Consolidated Edison Co. of New York (292 N. Y. 606).
In Matter of Salant (supra) cited by appellant where the client had satisfied a $1,264.63 judgment, which included $181.85 costs, for $650 without consent of the attorñey, in disregard of his lien thereon, and the judgment debtors appealed from an order vacating the satisfaction and permitting the attorney for the plaintiff to issue execution thereon, the Appellate Division modified the order by striking out the provision authorizing the attorney to issue execution for $506.66 (made up of 30% of the damages recovered in the judgment plus $181.85 costs) and affirmed as modified. The written retainer agreement provided for “ thirty per cent of any and all moneys realized * * * by way of settlement or suit ”. The attorney also claimed that he had a verbal agreement as to his right to the costs. In modifying the order by denying the attorney the right to issue execution against the judgment debtor for $506.66 the court held that this' was more than he would be entitled to, as the sum “ realized ” through settlement was only $650, and his fee would be limited thereto “ if the settlement was fair and honest ”. The court said: “ If there was no doubt as to the amount due to the attorney the order appealed from would find justification in Peri *525 v. N. Y. C. R. R. Co. (152 N. Y. 521). There is, however, a doubt not only as to the alleged oral agreement as to costs, but also as to the amount due to the attorney under his written retainer. * * * This question cannot be summarily determined as
between the attorney and the defendants who were not his clients.”
In the Domestic Dryer Corporation case cited by appellant the facts are entirely different. In that case the attorney who procured the retainer agreement was a judgment creditor of the client then known to him to be wholly insolvent, and its sole asset was a simple claim for goods sold and delivered. As appears from the unreported opinion handed up on the argument and the terms of the retainer agreement in that case, the attorney coupled with a contingent retainer agreement, which was clearly excessive in a simple case, a preferential assignment to himself out of the remaining proceeds of the amount due upon his two judgments for prior services. In the summary proceedings brought by the attorney, in which other judgment creditors intervened, Special Term held that the retainer agreement was fraudulently procured, and also that, as the lien attempted to be obtained by the retainer agreement was procured by a judgment creditor of a known insolvent corporation with the intent of procuring and giving him a preference over other creditors, the agreement was also void under section 15 of the Stock Corporation Law. It clearly appears from this case that appellant has no possible basis for his contention that Special Term should have disregarded the contract of retainer.
It should be kept in mind that this proceeding is not to enforce respondents’ lien against the creditors but to impress upon the unpaid judgment by judicial determination the amount of the lien which the statute vested in them.
In view of the fact that appellant raised no issue before the Special Term which he had standing to try where the respondents’ compensation for the services to be rendered had been definitely fixed by valid agreement between the attorneys and the client, the court was justified in summarily determining the amount of the attorneys’ lien in accordance with the terms of the contract. .
The order appealed from should be affirmed, with $50 costs and disbursements.
Bbewsteb, Fostee and Lawrence, JJ., concur; Hill, P. J., dissents.
Order affirmed, with $50 costs and disbursements.