Froessel, J.
Respondent, Stanley Wojcik, was seriously injured in an automobile accident on June 4, 1952. First his wife, and then he, retained Emanuel M. GeWertz as his attorney, executing an agreement that provided for GeWertz’s retaining 50% of all sums received or recovered by Wojcik through suit, settlement or otherwise by reason of his claim. GeWertz sought out and interviewed various witnesses, prepared the summons and complaint, commenced an action promptly, caused the case to be placed on the calendar, prepared and served a bill of particulars, frequently accompanied Wojcik to his physician, was present at the physical examination of Wojcik by defendant’s doctor, conferred with Wojcik personally and over the telephone frequently, and prepared and served a notice of examination before trial.
Subsequently, Wojcik desired to retain other counsel, either because he was dissatisfied with GeWertz, according to his substituted attorney, Mathew Yener, or because it would aid Wojcik in obtaining re-employment if he engaged a lawyer who was a friend of his employer, according to GeWertz. Yener communicated with GeWertz and discussed his substitution as attorney for Wojcik. The two attorneys then entered into a stipulation of substitution which GeWertz had prepared, and to which Yener obtained the signature and acknowledgment of Wojcik.
*636 The stipulation of substitution, dated September 9, 1953, provided:
“It is further stipulated, agreed and consented that the said Emanuel M. GeWertz, Esq. is to receive for his legal services an attorney’s retaining lien of twenty (20%) per cent of the gross recovery obtained either by way of settlement or other compromise, judgment, verdict, for [sic] decision, plus the return to him of his disbursements in the sum of $67.15, and the said fee shall be paid to Emanuel M. GeWertz, by the substituted attorney, Matliew Yener, Esq.
“It is understood that there shall not be deducted before the payment of the said twenty (20%) per cent to the said Emanuel M. GeWertz, Esq. any disbursements, whatever, incurred or to be incurred by the plaintiff or his new attorney, including reimbursement to the compensation insurance carrier, doctors, witness fees, etc.”
After the execution of this agreement, GeWertz performed no further services for Wojcik since, as he stated, he “ was out of the case for all intents and purposes ”, excepting that at Yener’s request he went to the insurance company in an attempt to settle the case.
The action appeared on the ready calendar for trial on January 12, 1956, at which time, at the suggestion of the attorneys involved, it was marked for conference; there the Justice presiding recommended that the case be settled for $75,000. During that conference, the Judge stated he felt that payment of attorney’s fees on the compensation carrier’s lien was improper under all the circumstances, and Yener agreed to waive all fees that might be due him on this sum. Yener then called GeWertz and told him that the court desired him to be present at another settlement conference on January 20,1956. GeWertz declined to attend on the ground that he was out of the case, had no control over its settlement, and that his compensation was fixed by the stipulation of substitution.
At the second conference before the same Justice, a stipulation of settlement was entered into, Yener — but not GeWertz-— and the attorneys for the defendants being present, which stipulation provided that Maryland Casualty Co. should pay the full amount of its policy, namely, $50,000, less the amount of the compensation carrier’s lien, and that defendant Miller Bakeries Corp. should pay the sum of $25,000 in monthly notes of $1,000 with 4% interest. The Judge thereupon stated:
*637 5 ‘ It is understood that the fees of attorneys shall not attach to the sum repaid to the Bakers Mutual Company, the compensation carrier, for any payment of its lien. * * * ■
“ The court views the original retainer which provided for payment of fees on the recovery of the compensation lien as overreaching and unconscionable and unenforeible, and this stipulation which cancels said payment has been by suggestion of the Court and consented to by Mr. Vener.”
In accordance with the terms of the above stipulation of settlement, Maryland Casualty Co. issued a draft in the sum of $40,784.77 payable to the order of Wojcik and both of his attorneys. Upon receipt of the draft, Vener wrote to GeWertz asking him to endorse it with the understanding that GeWertz was to receive 20% thereof and of each of the monthly notes as they were paid, plus his disbursements. GeWertz replied that he would not endorse the draft unless he was to receive from it the amount due him under the stipulation of substitution of September 9, 1953.
Vener thereupon moved by order to show cause for an order directing GeWertz “ to abide by the terms of the stipulation of settlement ” and “ to endorse drafts and notes issued in accordance with the terms of said stipulation ’ ’. In an affidavit read in opposition to the motion, GeWertz requested that his “ lien ” on the draft “ be fixed ” in accordance with the stipulation.
The proceedings came on before the same Justice, who directed that GeWertz be produced. He appeared the following day, whereupon the Judge took over the direct examination. He inquired how GeWertz obtained this case, which the latter thoroughly and satisfactorily explained; whether he had a retainer agreement with Wojcik, which GeWertz produced; whether it was filed in the Appellate Division, to which he responded in the affirmative. Inquiry was also made as to the services rendered Wojcik by GeWertz, to which he testified. Vener was then asked by the court if he desired to testify as to the services that he rendered to Wojcik, or if he wished “ to rely upon the good judgment of the court ’ ’. He chose to ‘ ‘ rely on the judgment of the court ” to fix the amount of his lien.
Nothing was elicited in this testimony concerning the circumstances surrounding the execution of the stipulation of substitution, except that it was drawn by GeWertz, who then gave it *638 to Vexier who obtained the signature and acknowledgment of Wojcik. GeWertz stated that he never talked to Wojcik about the stipulation.
An oral decision was then and there rendered by the Judge, in which he stated that the original retainer agreement between GeWertz and Wojcik (which they themselves had cancelled) was under the circumstances ‘ ‘ unreasonable, unconscionable, oppressive, and is void as contrary to public policy and wholly unenforcible as a matter of equity and a matter of law ’ ’. He further stated as to GeWertz that “ to evaluate his services on quantum meruit would be to give him but a minimum payment, bearing in mind the contingent features of the matter and that payment to him had to depend upon the recovery ”. He concluded that ‘ ‘ under all the circumstances in this case, total fees of thirty-three and one third per cent represent a maximum fair and reasonable return to all counsel in this case, based upon the net recovery, after credit for the lien of the compensation insurance carrier. * * * The lien of the substituted counsel will be fixed at one third of the amount of the gross fee, the balance to be paid to substituting counsel ” (emphasis supplied). No such relief had been asked for by the client, by Mr. Vener, or in the order to show cause. He thereupon directed GeWertz to endorse the settlement checks. The Appellate Division affirmed.
The single question presented here is simply whether, on the evidence before him and under the law, the court could fix the lien of GeWertz at an amount other than that set forth in the stipulation of substitution of September 9, 1953. There can be no doubt that GeWertz’s original retainer agreement with Wojcik, which called for a 50% contingent fee, was terminated by the discharge of GeWertz by Wojcik in September, 1953 (Lurie v. New Amsterdam Cas. Co., 270 N. Y. 379, 381; Matter of Tillman, 259 N. Y. 133; Matter of Krooks, 257 N. Y. 329; Martin v. Camp, 219 N. Y. 170). Therefore, whether or not that agreement was unconscionable as was found below is not relevant in this case.
However much we may agree with the lower courts as to the practice of attorneys arbitrarily charging their clients 50% of any recovery, regardless of trial, appeal, or settlement, or the nature and amount of services rendered (Ruiz v. Sistman, 1 A D 2d 806; Buckley v. Surface Transp. Co., 277 App. Div. *639 224, 226; see Ward v. Orsini, 243 N. Y. 123, 127; Ransom v. Cutting, 188 N. Y. 447, 450; Morehouse v. Brooklyn Heights R. R. Co., 185 N. Y. 520, 526; Matter of Fitzsimons, 174 N. Y. 15, 23), that issue is not now before us. Nor is there before us any issue as to the compensation due Vener for his services, since he abandoned any agreement that he had with Wojcik and allowed the court to fix the total fee.
We turn now to the stipulation of substitution and the agreement embodied therein which is the only one with which we have to deal. When Wojcik desired to change attorneys, and Vener indicated that he was the attorney who was to be substituted for GeWertz, it was clear that some provision would have to be made for GeWertz’s compensation. The parties could have moved for a formal order of substitution, in which case the compensation due GeWertz would have been determined therein. In that situation, it has been held that the compensation to the outgoing attorney could have been computed on a contingent basis, if so desired (Mosberg v. Belmont Park Plumbing & Heating Supply Corp., 1 A D 2d 779; Podbielski v. Conrad, 286 App. Div. 1040; Taylor v. Hentschel Bros., 273 App. Div. 972), but not if objected to (Martucci v. Brooklyn Children's Aid Soc., 284 N. Y. 408). In any event, this was not done. Instead, after some “ wrangling ”, and pursuant to rule 56 of the Rules of Civil Practice, a stipulation of substitution was entered into. The rule provides: “ The making and filing of such a stipulation shall have the same effect as an order of substitution ”.
We thus have here an agreement signed by both of the attorneys and the client, after GeWertz’s discharge. It specifies the compensation which shall be due to GeWertz. There is no basis for a finding of fraud, undue influence, overreaching, domination or any abuse of the attorney-client relationship with respect to that agreement (see Ward v. Orsini, supra; Morehouse v. Brooklyn Heights R. R. Co., supra, reaffd. after new hearing 123 App. Div. 680, affd. 195 N. Y. 537; Ransom v. Cutting, 188 N. Y. 447, supra; Matter of Fitzsimons, supra; Matter of Peters [Bachmann], 271 App. Div. 518, mod. on other grounds 296 N. Y. 974), and there was no such finding. GeWertz was no longer the attorney. He did not deal directly with the client, but with the client’s new lawyer. The new agreement they made had not been rescinded. Indeed, it had not even been questioned, *640 except as to the application of the percentage arrangement on the compensation carrier’s lien. Under those circumstances, and in view of the further fact that, except for an uncompleted examination before trial, the case was on the calendar ready for trial before GeWertz was discharged, there is simply no basis for disregarding the agreement. Special Term did not hold that that agreement was “ unreasonable, unconscionable, oppressive ” and “ void ” and “ wholly unenforcible as * # * a matter of law”. Yet, on an application which did not even seek such relief, the court completely invalidated GeWertz’s agreement with Yener and his former client.
Respondent urges here that since both attorneys submitted the question of the amount of their fees, the court below had the power to make an order fixing the total, as well as the division between them. Although Yener consented to the court’s determination of the amount of the attorneys’ fees, GeWertz never did so, but, as a respondent to the application, relied upon the agreement, and merely asked that it be observed. In such a situation the court was not free to disregard the contract as to GeWertz (Murray v. Waring Hat Mfg. Co., 142 App. Div. 514, 517; cf. Matter of Friedman, 136 App. Div. 750, affd. 199 N. Y. 537).
The client was not unfavorably affected. GeWertz’s original retainer had been cancelled; Yener surrendered his own. By the latter’s express consent, the gross fee was reduced to 33%% of the total recovery, less the compensation carrier’s lien. Instead of having the court fix GeWertz’s lien at the time of substitution, Yener and the client voluntarily agreed that GeWertz’s fee be 20%. This agreement the court could not, on this record, disturb. It follows that Yener, who did not try the case — the Trial Justice recommended and procured the settlement — would thus receive the balance, which would amount to about one third of the total fee, whereas the original attorney, GeWertz, would receive about two thirds. The client would pay precisely what the Trial Justice, with Yener’s consent, ordered, and no more.
Indeed, respondent Wojcik appropriately describes himself in his brief as a “ nominal respondent ”, adding: “ The dispute is between the discharged attorney and the new attorney ’ ’. The very language of the agreement requiring the substituted attorney to make the payments to GeWertz indicates that the *641 issue here is essentially a dispute between two attorneys, as in Sciolaro v. Asch (137 App. Div. 667), rather than between an attorney and his client. Rules designed to prevent an attorney from taking undue advantage of his confidential relation with a client have no place in dealing with an agreement not even discussed by the outgoing attorney with his former client, made after their relationship ended, and where the stipulation, and its execution and acknowledgment by the client, were procured by another attorney then retained by the client.
The order of the Appellate Division and that of Special Term should be reversed, without costs, and the matter remitted to Special Term for further proceedings not inconsistent with this opinion.